**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3409
_____

GENERAL REFRACTORIES COMPANY

v.

FIRST STATE INSURANCE CO; WESTPORT
INSURANCE CORPORATION,
Successor to, or, f/k/a Puritan Insurance Company;
LEXINGTON INSURANCE COMPANY; CENTENNIAL
INSURANCE COMPANY; HARTFORD ACCIDENT And
INDEMNITY CO; GOVERNMENT EMPLOYEES
INSURANCE CO; REPUBLIC INSURANCE COMPANY;
SENTRY INSURANCE, Successor to, or,
f/k/a Vanliner Insurance Company, f/k/a Great SW Fire
Insurance Co; AMERICAN INTERNATIONAL INS. CO;
AIU INSURANCE COMPANY; HARBOR INSURANCE
COMPANY; TRAVELERS CASUALTY & SURETY CO,
Successor to, or, f/k/a Aetna Casualty & Surety Company;
AMERICAN EMPIRE INSURANCE CO;
WESTCHESTER FIRE INSURANCE CO

Travelers Casualty and Surety Company
(f/k/a The Aetna Casualty and Surety Company),
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Judge: Honorable L. Felipe Restrepo
D.C. No. 2:04-cv-03509

_____

Argued September 9, 2016
_____

Before: JORDAN, VANASKIE and KRAUSE, *Circuit Judges*

(Opinion Filed: April 21, 2017)

Theodore J. Boutrous, Jr.          [ARGUED]
Richard J. Doren
Blaine H. Evanson
GIBSON, DUNN & CRUTCHER
333 South Grand Avenue
Los Angeles, CA  90071

Samuel J. Arena, Jr.
Daniel T. Fitch
William T. Mandia
STRADLEY, RONON, STEVENS & YOUNG
2005 Market Street, Suite 2600
Philadelphia, PA  19103
     *Counsel for Appellant, Travelers Surety and Casualty Company*

Michael Conley              [ARGUED]
Meghan Finnerty
Mark. E. Gottlieb
William H. Pillsbury
OFFIT KURMAN
1801 Market Street, 23rd Floor
Ten Penn Center
Philadelphia, PA  19103

Howard J. Bashman
Law Offices of Howard J. Bashman
2300 Computer Avenue
Suite G-22
Willow Grove, PA  19090
    *Counsel for Appellee, General Refractories Company*

Laura A. Foggan, Esq.
CROWELL & MORING
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
    *Counsel for Amicus Appellant American Insurance*
    *Association and Complex Insurance Claims*
    *Litigation Association*

John N. Ellison, Esq.
REED SMITH
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA  19103
    *Counsel for Amicus Appellant United Policyholders*

_____

OPINION

_____

VANASKIE, *Circuit Judge*.

Decades of litigation over the effects of pervasive asbestos use have yielded a financial burden borne across an array of industries. Today we must decide which of two companies will bear costs associated with a staggering number of asbestos claims. These companies—a historical manufacturer of asbestos-containing products and its insurer—dispute the rightful allocation of asbestos-related losses under thirty-year-old excess insurance policies. While the policies are dated, the consequences of our interpretation are immediate both to the parties at hand and to those insurers and insureds whose relationships are similarly governed.

The chief issue on appeal is whether a policy exclusion that disclaims losses "arising out of asbestos" will prevent a manufacturer from obtaining indemnification for thousands of negotiated settlements with plaintiffs who have suffered adverse health effects from exposure to its asbestos-containing products. The answer hinges on whether the language of the exclusion is ambiguous. After a bench trial, the District Court found that the phrase "arising out of asbestos" contained latent ambiguity because the exclusion could reasonably be read to exclude only losses related to raw asbestos, as opposed to losses related to asbestos-containing products. We disagree. The phrase "arising out of," when used in a Pennsylvania insurance exclusion, unambiguously requires "but for" causation. Because the losses relating to the underlying asbestos suits would not have occurred but for

4

asbestos, raw or within finished products, we will reverse the judgment of the District Court.

## I.

Plaintiff-Appellee General Refractories Company ("GRC") is a manufacturer and supplier of refractory products that are designed to retain their strength when exposed to extreme heat. To serve this purpose, GRC previously included asbestos in some of its products. GRC's use of asbestos brought about approximately 31,440 lawsuits alleging injuries from "exposure to asbestos-containing products manufactured, sold, and distributed by GRC" dating back to 1978. (J.A. 199.)

GRC's insurers initially fielded these claims. During the 1970s and '80s, GRC had entered into primary liability insurance policies with a number of different insurers. GRC also secured additional excess insurance policies to provide liability coverage beyond the limits of its primary insurance policies, including several excess policies issued by Defendant-Appellant Travelers Surety and Casualty Company, formerly known as the Aetna Casualty and Surety Company. As the number of asbestos-related injury claims against GRC began to grow, the primary insurers continued to defend and indemnify GRC. But this arrangement came to a halt in 1994 when GRC's liabilities from thousands of settled claims far exceeded the limits of its primary insurance coverage. In 2002, after years of continued settlements, GRC tendered the underlying claims to its excess insurance carriers, including Travelers, all of whom denied coverage on the basis of exclusions for asbestos claims.

GRC commenced this action against its excess insurers seeking a declaration of coverage for losses related to the underlying asbestos claims, as well as breach of contract damages. *Gen. Refractories Co. v. First State Ins. Co.*, 94 F. Supp. 3d 649, 652 n.1 (E.D. Pa. 2015). GRC eventually settled with all of the excess insurance defendants—except Travelers—by means of a stipulated dismissal with prejudice. *Id.* Travelers is the only excess insurer remaining in this litigation.

Travelers' contractual relationship with GRC is governed by two substantively identical excess insurance policies providing coverage from 1985 to 1986. Each policy obliges Travelers to indemnify GRC "against EXCESS NET LOSS arising out of an accident or occurrence during the policy period" subject to the stated limits of liability and additional terms.[1] (J.A. 370, 381.) In maintaining that it need not compensate GRC for losses related to the underlying asbestos claims, Travelers relies on an "Asbestos Exclusion" contained within the excess insurance contracts, which reads:

---

[1] Both Travelers policies define "EXCESS NET LOSS" as "that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all policies described in [the] Schedule of Underlying Insurance; whether or not such policies are in force." (J.A. 370, 381.)

6

It is agreed that this policy does not apply to EXCESS NET LOSS arising out of asbestos, including but not limited to bodily injury arising out of asbestosis or related diseases or to property damage.

(J.A. 377, 388.)  The policies do not define the terms "arising out of" or "asbestos."  *Gen. Refractories Co.*, 94 F. Supp. 3d at 654.

At its core, the parties dispute the meaning of four words within the Asbestos Exclusion:  "arising out of asbestos."  (J.A. 377, 388.)  The District Court held a one-day bench trial specifically to interpret this language.  GRC took the position that at the time the policies were drafted "arising out of asbestos" had a separate meaning than "arising out of asbestos-containing products."  *Gen. Refractories Co.*, 94 F. Supp. 3d at 653.  In GRC's view, the term "asbestos" plainly referred to the raw asbestos mineral that is "mined, milled, processed, produced, or manufactured for sale in its raw form."  *Id.*  There is no dispute that GRC made and sold refractory products that sometimes contained asbestos components.  But the parties also agree that GRC "never mined, milled, processed, produced, or manufactured raw mineral asbestos."  *Id.* at 654.  Thus, GRC argued that the exclusion did not encompass claims based on exposure to its finished asbestos-containing products.

To support its narrow interpretation of the Asbestos Exclusion, GRC presented several types of extrinsic evidence, including:

- examples of comparable insurance policies that other insurers had issued in the late

7

1970s through 1985, which explicitly excluded "asbestos" and products containing asbestos;

- examples of comparable insurance policies that explicitly defined the term "asbestos" broadly as "the mineral asbestos in any form";

- six consecutive policies sold by Travelers (as Aetna Casualty) to other policyholders from 1978 to 1985 which contained a more comprehensive and explicit asbestos exclusion[2] than the one included in the two policies sold to GRC;

- the Wellington Agreement,[3] which defined "Asbestos-Related Claims" as "any claims

---

[2] The broader asbestos exclusion read: "[T]his insurance does not apply to bodily injury which arises in whole or in part, either directly or indirectly, out of asbestos, whether or not the asbestos is airborne as a fiber or particle, contained in a product, carried on clothing, or transmitted in any fashion whatsoever." *Gen. Refractories Co.*, 94 F. Supp. 3d at 655.

[3] In the early 1980s, meetings between the plaintiffs' bar, target defendants in asbestos-related litigation, and six major insurance carriers (including Aetna Casualty) were moderated by Harry Wellington, Dean of Yale Law School. As a result, a settlement process emerged which came to be

8

or lawsuits . . . alleged to have been caused in whole or in part by any asbestos or asbestos-containing product";

- the expert testimony of Gene Locks, a lawyer who represented over 15,000 asbestos claimants and was the lead negotiator at the Wellington meetings, in which Locks explained that the terms "asbestos" and "asbestos-containing product" had distinct meanings to the parties involved in asbestos litigation during the relevant timeframe.

*Id.* at 654–57.

On the other hand, Travelers contended that the only reasonable interpretation of the Asbestos Exclusion is that claims for injuries related to asbestos in any form were excluded. Travelers asserted that this is the "natural, plain, and ordinary meaning of the terms, 'arising out of asbestos.'" *Id.* at 652–53. Thus, Travelers asserted that GRC's losses associated with the underlying asbestos claims were precluded by the Asbestos Exclusion. For support, Travelers presented "GRC's corporate records, as well [as] its communications with Travelers and its own insurance broker," as evidence of "the parties' intent to exclude—or their awareness, belief, or knowledge that the purchased insurance did exclude—all injuries related to asbestos in any form." *Id.* at 656–57.

---

known as the Wellington Agreement. *Gen. Refractories Co.*, 94 F. Supp. 3d at 656.

After weighing the evidence and arguments, the District Court issued a memorandum and order concluding that the Asbestos Exclusion contained a latent ambiguity "because the terms [were] reasonably capable of being understood in more than one sense." *Id.* at 660. The District Court agreed that GRC's interpretation of "asbestos" as referring only to the raw mineral asbestos rather than other finished products containing asbestos was "consistent with the plain meaning of the written policy," and therefore "objectively reasonable," and that Travelers had not met its burden of showing that GRC's interpretation was unreasonable. *Id.*

Having found ambiguity, the District Court observed that GRC's industry custom and trade usage evidence supported the assertion that "[d]uring the relevant era, industry participants used the phrase to denote losses arising from mining, milling, producing, processing, or manufacturing the raw mineral," not from "finished products." *Id.* at 663. The District Court found no evidence in the record contradicting this interpretation, and further rejected Travelers' characterization of its course of performance evidence. *Id.* at 663–664. Ultimately, the District Court concluded that Travelers had failed to "show not only that its interpretation is reasonable, but also that GRC's interpretation is not reasonable." *Id.* at 664. Accordingly, the District Court deemed the Asbestos Exclusion unenforceable to preclude indemnification to GRC for its losses in the underlying asbestos-related lawsuits, and issued a memorandum and order to this effect. The parties subsequently stipulated that, under the District Court's interpretation of the exclusion, Travelers must cover $21,000,000 of GRC's losses—the combined limit of the two

10

excess insurance policies. The District Court accepted this stipulation, awarded GRC an additional $15,273,705 in prejudgment interest, and entered final judgment for GRC. Travelers now appeals the District Court's interpretation of the Asbestos Exclusion.

## II.

The District Court had diversity jurisdiction over this matter under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291. Pennsylvania contract law governs. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). In Pennsylvania, "[t]he interpretation of an insurance contract is a question of law." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 893 (Pa. 2006)). Thus, we engage in plenary review of the District Court's determination. *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 101 (3d Cir. 1986). In the first instance, the insured bears the burden of demonstrating that its claim falls within the policy's affirmative grant of coverage. *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996); *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966). Where an insurer seeks to disclaim coverage on the basis of a policy exclusion—as Travelers does here—the insurer bears the burden of proving the applicability of the exclusion as an affirmative defense. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

## III.

We now review the District Court's interpretation of the Asbestos Exclusion. In doing so, we must "ascertain the

11

intent of the parties as manifested by the language of the written instrument." *Id.* (quoting *Gene & Harvey Builders v. Pa. Mfrs. Ass'n*, 517 A.2d 910, 913 (Pa. 1986)). Thus, the language of the contract must be the "polestar" of our inquiry. *Id.* When the language is clear and unambiguous, we give effect to that language. *Id.* But when the language is ambiguous, the provision should "be construed in favor of the insured and against the insurer." *Id.*

## A.

We begin by deciding whether the language of the Asbestos Exclusion is ambiguous. *Pac. Emp'rs Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)). Ambiguity exists where the language of the contract is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Madison Constr. Co.*, 735 A.2d at 106 (quoting *Hutchison*, 735 A.2d at 390). After a bench trial, the District Court found the language of the Asbestos Exclusion to contain latent ambiguity. We disagree with the District Court's penultimate conclusion because the Court's analysis overlooked the phrase "arising out of," which has an established, unambiguous meaning under Pennsylvania insurance law.

The District Court properly began its analysis by determining whether the text of the Asbestos Exclusion, which precludes indemnification for "EXCESS NET LOSS arising out of asbestos," was ambiguous. GRC had asserted that "asbestos" refers only to mineral asbestos in its raw, unprocessed form. Travelers, on the other hand, maintained that "asbestos" is a purposefully broad term which

12

encompasses both asbestos in its raw form and products which contain asbestos—such as those manufactured and sold by GRC.

Driven by the parties' arguments, the District Court largely focused on whether the word "asbestos" was reasonably susceptible of differing interpretations. After examining various dictionary definitions and grammatical uses of "asbestos," it concluded that the term's common usage "reveal[ed] a latent ambiguity as to what it denotes." *Gen. Refractories Co.*, 94 F. Supp. 3d at 658–59. Without deciding which of the parties' views was more reasonable, the District Court found that both were consistent with the plain meaning of the language and objectively reasonable. Because "asbestos" was "reasonably capable of being understood in more than one sense," the District Court held that the exclusion was ambiguous. *Id.* at 660.

While the District Court engaged in a thorough analysis of the breadth of the term "asbestos," its focus was misplaced. The rest of the language at issue—"arising out of"—has an unambiguous legal meaning that renders any uncertainty concerning the meaning of the word "asbestos" immaterial. Pennsylvania courts have long construed the phrase "arising out of"—when used in the context of an insurance exclusion—to "[m]ean[] causally connected with, not proximately caused by." *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (1967); *Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989). A policy provision containing the phrase "arising out of" is satisfied by "'[b]ut for' causation, i.e., a cause and result relationship." *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa. 1961).

13

Recognizing that Pennsylvania courts consistently interpret "arising out of" to require "but for" causation, we have previously observed that this formulation is "well-settled," having been applied in numerous insurance law contexts. *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391–92 (3d Cir. 2012). This understanding of the phrase is entrenched in Pennsylvania jurisprudence. *See, e.g.*, *Forum Ins. Co.*, 866 F.2d at 82 (holding that "arising out of" requires "but for" causation in the context of an exclusion for injury or death arising in the course of employment); *Smith v. United Servs. Auto. Ass'n*, 572 A.2d 785, 787 (Pa. Super. Ct. 1990) (requiring "but for" causation in interpreting an uninsured motorist provision); *Erie Ins. Exch. v. Eisenhuth*, 451 A.2d 1024, 1025 (Pa. Super. Ct. 1982) (no-fault automobile insurance policy); *Tuscarora Wayne Mut. Ins. Co. v. Kadlubosky*, 889 A.2d 557, 563 (Pa. Super. Ct. 2005) (commercial general liability insurance policy); *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. Ct. 1997) (same). Not only have courts applying Pennsylvania law interpreted "arising out of" to require "but for" causation, they have also held that the phrase is unambiguous. *See Madison Constr. Co.*, 735 A.2d at 110 (finding that "arising out of" language was not ambiguous); *McCabe*, 228 A.2d at 903 (same); *see also Forum Ins. Co.*, 866 F.2d at 82 (relying on *McCabe* in rejecting an argument that a policy exclusion containing the phrase "arising out of . . . his employment" was ambiguous).

With this consistent interpretation in mind, we find that the plain language of the Asbestos Exclusion, disclaiming "EXCESS NET LOSS arising out of asbestos," is unambiguous on its face and is not "reasonably susceptible of different constructions." *Madison Constr. Co.*, 735 A.2d at

14

106. The provision plainly encompasses losses that would not have occurred but for asbestos or which are causally connected to asbestos. Pennsylvania law permits no other interpretation.

**B.**

Although we find the language of the policy to be clear on its face, our inquiry does not immediately end when the plain meaning of the provision is unambiguous. Evidence of industry custom or trade usage "is always relevant and admissible in construing commercial contracts," and does not depend on the existence of ambiguity in the contractual language. *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001). Where it can be shown that words have a special meaning or usage in a particular industry, "members of that industry are presumed to use the words in that special way, whatever the words mean in common usage and regardless of whether there appears to be any ambiguity in the words." *Id.*

In the course of arguing that "asbestos" had a separate and distinct meaning from "asbestos-containing products," GRC presented industry custom and trade usage evidence which was ultimately credited by the District Court as supporting GRC's narrow interpretation of the exclusion. *Gen. Refractories Co.*, 94 F. Supp. 3d at 654–57. While GRC's evidence may bear on the ambiguity of the word "asbestos," it does not cloud the meaning of the phrase "arising out of."[4] GRC even agrees that "arising out of"

---

[4] GRC explains that it "has offered custom and trade usage evidence to support its assertion that 'asbestos' and 'asbestos-containing products' were distinct terms and that

15

requires "but for" causation. In its brief, GRC explains that its proffered "interpretation of the Asbestos Exclusion itself utilizes a 'but for' causation standard." (Appellee Br. at 32.) GRC clarifies that its argument has been that the Asbestos Exclusion "excludes losses related to (or 'but for') the mineral asbestos, as opposed to losses related to or 'but for' GRC's asbestos-containing products." (Appellee Br. at 32.)

This argument by GRC incorrectly presumes that the meaning attached to "asbestos" would have a material effect on the outcome of this coverage dispute. But assigning "but for" causation to the phrase "arising out of" carries the important consequence of negating any material ambiguity that the term "asbestos" may introduce into the clause. Even the narrowest interpretation of "asbestos"—as referring only to raw mineral asbestos—leads to the conclusion that coverage for losses associated with the claims against GRC is disclaimed by the Asbestos Exclusion. While we express no opinion about whether the term "asbestos" is ambiguous here, if we were to credit GRC's theory that "asbestos" only referred to mineral asbestos in its raw, unprocessed form—as the District Court did—the asbestos claims against GRC would still fall within the Asbestos Exclusion.

The application of "but for" causation compels the conclusion that GRC's losses are excluded under the policy as a matter of law. "But for" causation "requires the plaintiff to show 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *Univ. of Tex.*

_____

'asbestos' was not used to unambiguously subsume 'asbestos-containing products.'" (Appellee Br. at 43 n.5, 44–45.) No mention is made of how the evidence bears on the meaning of "arising out of."

*Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013) (citing Restatement (First) of Torts § 431 cmt. a (1934)); *see also Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366 (3d Cir. 1990) (noting that "[c]ause in fact or 'but for' causation requires proof that the harmful result would not have come about but for the conduct of the defendant"); *First v. Zem Zem Temple*, 686 A.2d 18, 21 n.2 (Pa. Super. Ct. 1996) (quoting *E.J. Stewart, Inc. v. Aitken Prods., Inc.*, 607 F. Supp. 883, 889 (E.D. Pa. 1985)) ("Cause in fact or 'but for' causation provides that if the harmful result would not have come about but for the negligent conduct then there is a direct causal connection between the negligence and the injury."). "But for" causation "is a de minimis standard of causation, under which even the most remote and insignificant force may be considered the cause of an occurrence." *Takach v. B.M. Root Co.*, 420 A.2d 1084, 1086 (Pa. Super. Ct. 1980).

The claims that underlie this litigation stem from exposure to the asbestos incorporated into the finished products that GRC manufactured or sold. GRC "only paid settlements and incurred damages when the underlying claimants alleged exposure to GRC's asbestos-containing products." (Appellee Br. at 37; J.A. 36.) For each such settlement, a claimant was required to produce "sworn evidence of exposure to a GRC asbestos-containing product" and "medical verification of an asbestos-related disease." (Appellee Br. at 5; J.A. 36.) GRC's own expert, Gene Locks, testified that asbestos exposure is a necessary precursor to asbestos-related disease. (J.A. 316:18–21.) Locks further agreed that "[w]hatever disease [the asbestos plaintiffs] had would have been caused by whatever asbestos fiber they were exposed to, whether it came from the raw asbestos . . . or it was in the end product." (J.A. 302:7–20.) This is true both of

17

plaintiffs working in a profession that required exposure to raw asbestos—such as a miner or miller—and those who were exposed to asbestos-containing products. (*Id.*) Locks also testified that the fiber released from a product containing asbestos is "[t]he same fiber that's ultimately milled." (J.A. 303:6–9; *see also id.* at 302:21–303:5; 304:3–5; 304:18–20; 317:12–22 (stating that asbestos is contained within the end product).)

It is clear that there is an appropriate causal connection between asbestos and the losses GRC suffered in asbestos litigation, and applying GRC's narrow interpretation of "asbestos" as referring only to raw mineral asbestos does not affect the outcome. Even setting aside Lock's testimony, there is no dispute that some of GRC's products contain asbestos, that the plaintiffs in the underlying asbestos lawsuits were exposed to GRC's asbestos-containing products, and that these plaintiffs allege injuries from asbestos-related diseases. These facts alone compel the conclusion that asbestos in its raw mineral form is causally connected to the losses GRC has incurred as a result of these lawsuits. But for the inclusion of asbestos in GRC's products—which was originally mined or milled as a raw mineral—the plaintiffs exposed to those products would not have contracted asbestos-related diseases. In order to find that losses relating to exposure to asbestos-containing products are not causally connected to raw asbestos, we would need to assign a different standard of causation to the phrase "arising out of," which is inconsistent with the plain meaning of the language in this Pennsylvania insurance exclusion.

**C.**

18

GRC finally contends that Travelers waived the causation argument by not raising it before the District Court. Appellate courts will generally refuse to consider issues that the parties did not raise below. *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). To preserve an argument, a party must "unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999). But while parties may not raise new arguments, they may "place greater emphasis" on an argument or "more fully explain an argument on appeal." *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013). The parties may even "reframe" their argument "within the bounds of reason." *Id.*

Travelers has argued throughout this litigation that GRC's losses associated with asbestos claims "arise out of asbestos" because the claims were caused by exposure to the asbestos in GRC's products. (*See, e.g.*, Travelers' Post-Trial Br. at 8, E.D. Pa. Docket No. 631; Travelers' Proposed Findings of Fact at 9, E.D. Pa. Docket No. 630; Travelers' Mot. for Summ. J. at 10–11, E.D. Pa. Docket No. 338; Travelers' Reply Br. on Mot. for Summ. J. at 2, E.D. Pa. Docket No. 397.) The causal connection between the claims for which GRC seeks indemnification and asbestos in whatever form has been an integral part of Travelers' argument as to why the Asbestos Exclusion is applicable. While Travelers has focused on this argument with greater specificity on appeal, the causation analysis required by the Asbestos Exclusion has always been at issue. GRC is correct that Travelers had never before specified that "arising out of" is legally synonymous with "but for" causation, but GRC also

19

acknowledged that this theory is the "latest iteration of [Travelers'] argument that the claims are excluded by the 'plain meaning' of the Asbestos Exclusion." (Appellee Br. at 20.) In GRC's own words, Travelers has consistently "maintained that the 'plain-meaning' of the exclusion has only one reasonable interpretation to exclude claims relating to asbestos in any form." (Appellee Br. at 22.) Travelers' plain-meaning theory has always hinged on whether the underlying lawsuits were caused by asbestos.

But even if Travelers' argument had not been placed before the District Court, we would nonetheless consider it in reaching our conclusion. In "exceptional circumstances," the "public interest can require that the issue be heard." *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 671 (3d Cir. 1999). This is just such an occasion. The language found within this exclusion is prevalent in insurance contracts, and our interpretation may affect a wide range of insurers and insureds beyond the immediate parties to the suit. *See Selected Risks Ins. Co. v. Bruno*, 718 F.2d 67, 69–70 (3d Cir. 1983) (holding that exceptional circumstances were present where proper application of Pennsylvania public policies with respect to insurance contracts would affect "every inhabitant . . . and the insurance companies that serve them").

The language in Travelers' policies is far from unique; it is found in numerous Pennsylvania insurance policies that have been issued in the fifty years since the decision in *Goodville* established the meaning of "arising out of." Were we to ignore the consistent and explicit meaning assigned to the phrase in Pennsylvania insurance exclusions, we would cast doubt on a tradition of interpretation that many parties have relied upon in defining their contractual obligations. Parties to an insurance contract must be able to place faith in

20

consistent interpretations of common language when drafting their policies if they are to properly allocate the risks involved. While future parties may present evidence demonstrating a meaning of "arising out of" that is unique to their contract, the phrase is not ambiguous on its face when used in a Pennsylvania insurance contract.

## IV.

For the foregoing reasons, we reverse the District Court's judgment and remand with instructions to enter judgment in favor of Travelers.