**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2390
_____

JAMES DENNIS

v.

CITY OF PHILADELPHIA; DETECTIVE FRANK
JASTRZEMBSKI; DETECTIVE MANUEL SANTIAGO;
OFFICERS JOHN DOE(S), INDIVIDUALLY AND AS
POLICE OFFICERS FOR THE CITY OF PHILADELPHIA


FRANK JASTRZEMBSKI; MANUEL SANTIAGO,

Appellants

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-02689)
District Judge: Honorable Eduardo C. Robreno


Argued on January 20, 2021

Before: SMITH, *Chief Judge*, HARDIMAN and ROTH,
Circuit Judges

(Opinion filed: November 23, 2021)

Shane Haselbarth  (**ARGUED**)
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street
Suite 2300
Philadelphia, PA 19103
                    Counsel for Appellants


Craig R. Gottlieb
City of Philadelphia
Law Department
17th Floor
1515 Arch Street
Philadelphia, PA 19102
                    Counsel for Appellee City of
Philadelphia


Paul M. Messing  (**ARGUED**)
David Rudovsky
Kairys Rudovsky Messing Feinberg & Lin
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
                    Counsel for Appellee James Dennis

O P I N I O N

**ROTH**, <u>Circuit Judge</u>:

This is an interlocutory appeal from the Order of the District Court for the Eastern District of Pennsylvania, denying defendant-appellants' Motion to Dismiss James Dennis's Section 1983 claims. Defendant-appellants are police detectives with the Philadelphia Police Department, who investigated Dennis for charges relating to the murder of a young high-school student in 1991, a crime for which Dennis was convicted. In 2013, the District Court granted Dennis's habeas petition and vacated his murder conviction; that decision was affirmed by our Court en banc in 2016.[1] Shortly thereafter, Dennis brought the present action, asserting Section 1983 claims against the defendants and alleging, *inter alia*, the violation of his constitutional rights under the Fourteenth Amendment. Defendants moved to dismiss the complaint, arguing, among other things, that they are entitled to qualified immunity and that the suit is barred by *Heck v. Humphrey*.[2] After the District Court denied their motion, the detectives filed this interlocutory appeal.

**I.**

---

[1] *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 269 (3d Cir. 2016) (en banc).
[2] 512 U.S. 477 (1994).

Dennis was charged with the 1991 robbery and first-degree murder of a young woman, Chedell Williams; he was convicted and sentenced to death. In 2013, the United States District Court for the Eastern District of Pennsylvania granted Dennis's habeas petition, vacated his conviction, and ordered a new trial on all charges, finding that Dennis's prosecutors withheld material impeachment evidence.[3] In August 2016, our Court, sitting en banc, affirmed the District Court's decision and remanded the case to state court.[4]

On remand, Dennis was offered a deal, in exchange for a time-served sentence, to plead *nolo contendere* to reduced charges of third-degree murder, robbery, carrying a firearm without a license, possession of an instrument of crime with the intent to employ it criminally, and conspiracy to commit robbery. Rather than risk a new trial and the possibility of further imprisonment, Dennis accepted the deal and was sentenced to 12½ to 25 years imprisonment; he was given credit of 9,162 days for the time he had already served in prison for those crimes, and he was then released.

Shortly thereafter, Dennis brought this action against Detective Frank Jastrzembski, Detective Manuel Santiago (collectively, the detectives), Officer John Doe(s), and the City of Philadelphia for fabrication of evidence and for deliberate deception under the Fourteenth Amendment of the Constitution and 42 U.S.C. § 1983 (Count I), civil rights conspiracy (Count II), failure to intervene (Count III), supervisory liability against Detective Jastrzembski (Count

---

[3] *Dennis v. Wetzel*, 966 F. Supp. 2d 489 (E.D. Pa. 2013).
[4] *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d at 269.

4

IV), and municipal liability against the City of Philadelphia (Count V).

Dennis's complaint alleges that the detectives' investigation of Williams' 1991 murder involved conduct that violated his due process rights. First, Dennis alleges that the detectives concealed information about other individuals, who had confessed their involvement with the murder or who knew who was involved, and that the detectives coerced/concealed certain other witnesses. Specifically, Dennis alleges that the detectives never followed up on inconsistencies in statements made by Zahra Howard, who was with Williams on the day of her murder. Ms. Howard originally told the detectives that she never saw the assailants but later told her aunt and uncle that she recognized the assailants from Olney High School, a school that Dennis had never attended. Howard's aunt and uncle informed the detectives about her statement; it was also corroborated by the victim's aunt. This information, which was recorded in the detectives' activity logs, was concealed from Dennis for ten years.

In addition, Dennis alleges that several days after the murder, Montgomery County law enforcement advised the Philadelphia Police Department that an inmate in their County Prison spoke with a man who confessed his involvement in Williams's murder. A signed statement from the inmate included details about all three men involved in the murder and identified the source of the information. However, defense trial counsel never received any materials relating to the investigation of these three individuals; the information was

5

only revealed 10 years later during Post Conviction Relief Act (PCRA)[5] discovery.

Second, Dennis alleges that the detectives fabricated evidence to secure his conviction. Specifically, Dennis alleges that the detectives falsely claimed to have found certain clothing items that matched those of the shooter, as described by eyewitnesses to the murder. He further alleges that Detective Jastrzembski falsely testified that the clothing was found at Dennis's residence but later "disappeared" from police headquarters prior to trial. He also alleges that the detectives coerced and threatened Charles Thompson to testify falsely at trial that he saw Dennis with a gun the night of the murder.

Third, Dennis alleges that the detectives concealed evidence that would have supported his alibi. Specifically, Dennis's alibi that he was elsewhere at the time of the murder would have been corroborated by a witness's time-stamped welfare receipt. When questioned by the detectives, the witness based her time estimates on the receipt's military-style timestamp of 13:03 (1:03 PM), which she mistook to mean 3:03 PM. The detectives did not correct the witness when she misread the receipt's military-style timestamp while they were interviewing her; instead, they took the only copy of the receipt and never shared it with Dennis or the prosecutors. Dennis's trial counsel never obtained a copy; the witness testified based on her earlier misreading of the receipt; and it was not until direct appeal that a copy of the receipt revealed the witness's mistake.

---

[5] 42 Pa. Cons. Stat. §§ 9541 *et seq*.

6

Dennis also alleges that only four of the nine eyewitnesses identified by Philadelphia Police had selected him from the lineup; three of those four testified for the Commonwealth at Dennis's trial. After learning this information, Dennis's counsel requested a new lineup with all nine eyewitnesses. The new lineup never occurred.

Defendants moved to dismiss Dennis's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. They argued, among other things, that the action is barred by *Heck v. Humphrey*[6] and that they are entitled to qualified immunity because Dennis has failed to allege a constitutional violation of clearly established law. On May 15, 2019, the District Court partially granted the motion as to the City and denied the motion as to the detectives. The detectives appealed.

## II. SCOPE OF REVIEW

"We exercise de novo review of a district court's denial of a motion to dismiss on qualified immunity grounds as it involves a pure question of law."[7] In reviewing a denial of qualified immunity at the Rule 12(b)(6) stage of litigation, we must accept Dennis's allegations as true and draw all inferences in his favor.[8]

---

[6] 512 U.S. 477 (1994); Appx. 1–35 (Memorandum Opinion of the District Court).

[7] *James v. City of Wilkes–Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citation omitted).

[8] *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013).

## III. APPELLATE JURISDICTION

The District Court has subject matter jurisdiction over Dennis's federal claims under 28 U.S.C. § 1331.[9] "Ordinarily we do not have jurisdiction to review district court orders denying motions to dismiss . . . because there is no final order within the meaning of 28 U.S.C. § 1291."[10] However, in *Ashcroft v. Iqbal*,[11] "the Supreme Court held that a district court order denying a motion to dismiss based on qualified immunity [can be] appealable under the collateral order doctrine."[12] To review a collateral order, the order must conclusively determine the disputed question.[13] A refusal to

---

[9] *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 187 (3d Cir. 2021).

[10] *Acierno v. Cloutier*, 40 F.3d 597, 605 (3d Cir. 1994) (citation omitted).

[11] 556 U.S. 662, 672–75 (2009).

[12] *Rehiel*, 738 F.3d at 570–71.

[13] *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 208 (3d Cir. 2001) (explaining that collateral orders become reviewable when they "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal"); *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 240–41 (3d Cir. 2016) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.").

dismiss is a ruling "conclusive as to this right," for which immediate appeal is available.[14]

Before the District Court, the defendants argued that qualified immunity attaches to any *Brady v. Maryland*[15] claim because (1) in 1992, when the alleged violations occurred, no reasonable detective could have known that she could be sued for a *Brady* violation by a plaintiff that pled guilty or *nolo contendere*, and (2) the police's *Brady* obligations were not clearly established in 1992. The District Court denied the motion.

In analyzing qualified immunity, the District Court found that the defendants' arguments improperly characterized Dennis's claims. It found that Dennis had not asserted any claims involving *Brady* violations against the detectives, only claims for fabrication of evidence and deliberate deception. That said, the District Court left open the opportunity for the defendants to reassert their qualified immunity defense at a later date.

Despite leaving open the opportunity for the defendants to re-raise their qualified immunity defense at a later date, the District Court's express denial of qualified immunity is a conclusive determination of an important issue that is completely separable from the merits and is unreviewable on appeal from final judgment.[16] This is sufficient to give rise to

---

[14] *Oliver v. Roquet*, 858 F.3d 180, 188 (3d Cir. 2017) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)).

[15] 373 U.S. 83 (1963).

[16] *Mitchell v. Forsyth*, 472 U.S. 511, 512 (1985).

appellate jurisdiction over the qualified immunity ruling to the extent it turns on an issue of law.

Our jurisdiction over this interlocutory appeal does not, however, extend to the question of whether Dennis's claims are barred by *Heck*. We have discretion to exercise jurisdiction over a decision that is not independently appealable where (1) it is "'inextricably intertwined'" with an appealable decision or (2) review of the ordinarily non-appealable decision is "necessary to ensure a meaningful review" of an appealable decision.[17] However, jurisdiction does not exist over a non-appealable decision simply because it arises out of "'the same factual matrix'" of an appealable decision, even if considering the decisions together would serve judicial efficiency.[18]

The District Court's *Heck* ruling is not inextricably intertwined with its qualified-immunity ruling, nor is reviewing the *Heck* ruling necessary to ensure a meaningful review of the qualified-immunity ruling. A *Heck* inquiry turns on "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."[19] By contrast, a qualified immunity inquiry turns on "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct."[20] These

---

[17] *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 130 (3d Cir. 2018) (quoting *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 136 (3d Cir. 2004)).

[18] *Id.* (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 209 (3d Cir. 1990)).

[19] 512 U.S. at 487.

[20] *L.R.*, 836 F.3d at 241.

inquiries are distinct and separable. In addition, the *Heck* issue "is effectively reviewable on appeal. . . . [U]nlike immunity rights where the right is lost if the case goes to trial, an appellate court can reverse the district court after entry of a final judgment without departing from the holding or purpose of *Heck*."[21] Accordingly, a number of our sister Courts of Appeals have held that they lack jurisdiction to consider *Heck* on an interlocutory appeal from denial of qualified immunity.[22]

The detectives try to bring *Heck* within our jurisdiction by shoehorning *Heck* into the qualified immunity analysis. They cite *Ashcroft v. Iqbal*, where the Supreme Court held that "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded. In that sense, the sufficiency of [a] pleading is both 'inextricably intertwined with,' and 'directly implicated by,' the qualified-immunity defense."[23] The detectives essentially argue that, if *Heck* bars Dennis's claims, he has failed to state a claim upon which relief can be granted, and

---

[21] *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000).
[22] *See id.* at 1285; *Sayed v. Virginia*, 744 F. App'x 542, 547–49 (10th Cir. 2018) (collecting cases); *Harrigan v. Metro Dade Police Dep't Station No. 4*, 636 F. App'x 470, 476 (11th Cir. 2015); *Norton v. Stille*, 526 F. App'x 509, 515 (6th Cir. 2013); *Scott v. City of Pasadena*, 373 F. App'x 759 (9th Cir. 2010). To be sure, circuit courts have not been unanimous on this issue. However, courts that have considered *Heck* on an interlocutory appeal have generally done so without explaining in detail the basis for their jurisdiction. *See, e.g.*, *Poole v. City of Shreveport*, 13 F.4d 420, 426–27 (5th Cir. 2021); *Lucier v. City of Ecorse*, 601 F. App'x 372, 376 (6th Cir. 2015).
[23] 556 U.S. at 673.

thus failed to allege sufficiently the violation of a constitutional right.

The detectives' argument fails because it papers over the difference between *Heck* and the typical analysis under Rule 12(b)(6) that was contemplated by *Iqbal*. The typical analysis requires a court to measure the alleged facts against the elements of a claim. This analysis clearly and substantially overlaps with the process of determining whether a plaintiff has sufficiently alleged the violation of a constitutional right. By contrast, the *Heck* analysis requires a court to compare the asserted claims and requested relief with a preexisting conviction or sentence; the plaintiff must demonstrate that the prior conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of *habeas corpus*."[24] This analysis involves different facts, and a different legal framework, than the process of determining whether a plaintiff has sufficiently alleged the violation of a constitutional right. For that reason, the typical analysis under Rule 12(b)(6) is inextricably intertwined with a denial of qualified immunity, but under *Heck* it is not.

Accordingly, although we have jurisdiction in this interlocutory appeal to consider the District Court's denial of the detectives' qualified immunity defense, we do not have jurisdiction at this time to consider their arguments under *Heck*.

---

[24] *Heck*, 512 U.S. at 486–87.

## IV. DISCUSSION

Turning to the merits of the qualified immunity defense, the detectives present two arguments aside from the one they advance under *Heck*. First, the detectives contend that Dennis failed to allege a constitutional violation because he does not assert a Fourth Amendment claim. Second, they argue that qualified immunity attaches because the constitutional claims asserted do not involve rights that were clearly established in 1992, when the alleged violations took place.

Qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[25] As noted, when analyzing a qualified immunity claim, we consider "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct."[26] The detectives challenge both these holdings. We address each in turn.

### A. Violation of a Constitutional Right

#### 1. Fourth Amendment

The detectives first assert that Dennis failed to sufficiently allege a constitutional violation because he did not plead a Fourth Amendment claim. In response, Dennis contends that the detectives waived this argument by failing to

---

[25] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[26] *L.R.*, 836 F.3d at 241.

raise it before the District Court and by raising it for the first time in this appeal. We agree with Dennis.

Generally, appellate courts refuse to consider issues not raised by the parties below.[27] To preserve an argument, a party must "unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits."[28] Although the parties are precluded from raising new arguments, they may "place greater emphasis" on an argument or "more fully explain an argument on appeal."[29] The parties may even "reframe" their argument "within the bounds of reason."[30] That is not what the detectives did in this case.

Only now, before this Court, the detectives argue for the first time in this litigation that Dennis cannot sufficiently allege a constitutional violation because his claims are cognizable only under the Fourth Amendment. Specifically, the detectives contend that a claim for deprivation of liberty, when premised on "the fabrication of evidence by a government officer," has only been recognized under the Fourteenth Amendment where the government officer involved was a prosecuting attorney and not a police officer. Accordingly, they argue that Dennis's Section 1983 claims for fabricated evidence and deliberate deception by police officers can only be brought under the Fourth Amendment, and not the Fourteenth Amendment.

---

[27] *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 162 (3d Cir. 2017).

[28] *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999).

[29] *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013).

[30] *Id.*

14

Because the detectives did not present this argument to the District Court, we decline to reach its merits.[31]

## B. Clearly Established Law

The detectives argue that none of Dennis's claims assert the violation of a right that was clearly established in 1992. They group Dennis's claims into three categories: (1) a catchall improper investigation claim, (2) a deliberate deception claim, and (3) an evidence fabrication claim. However, the improper investigation grouping does not accurately reflect Dennis's complaint; the complaint does not contain a catchall claim for improper investigation. Indeed, Count I, at issue here, contains claims for the detective's deliberate deception and for evidence fabrication. Accordingly, the issue we must consider is the following: whether the violation of due process by evidence fabrication and by deliberate deception as alleged in Counts I(A) and I(B) was clearly established in 1992.

A clearly established right is one that is so apparent that "every reasonable official would understand that what he is doing is unlawful."[32] Absent existing precedent that places "the statutory or constitutional question beyond debate," such

---

[31] If we had reached the merits, we would have permitted the types of claims presented here to be pursued under the Fourteenth Amendment. *See*, *e.g.*, *Black v. Montgomery Cty*, 835 F.3d 358, 370 (3d Cir. 2016); *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014).

[32] *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020) (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

15

an understanding will not be attributed to an official.[33]  As the Supreme Court has emphasized, the right must be defined with a "high 'degree of specificity'" to be clearly established.[34] That said, we do not require that the prior precedent have indistinguishable facts.[35]

Only controlling precedent in the relevant jurisdiction can place a constitutional question beyond debate.[36] Nevertheless, context matters when qualified immunity is at issue and the "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"[37]

First, citing *McDonough v. Smith*,[38] the detectives contend that a fabrication of evidence claim has been recognized under the Fourteenth Amendment only where the government officer involved in fabricating evidence was a prosecuting attorney.  Not so.  In *Halsey v. Pfeiffer,* we concluded that it was axiomatic that "those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not

---

[33] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[34] *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)).

[35] *al-Kidd*, 563 U.S. at 741. ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

[36] *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

[37] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[38] 139 S. Ct. 2146, 2155 (2019).

commit."[39]   *Halsey* involved an evidence fabrication claim under the Fourteenth Amendment brought against police officers. We emphasized that the Supreme Court decades ago had established that the Constitution forbids those tasked with upholding the law from knowingly using falsified evidence to secure a criminal conviction.[40]

The detectives argue that *Halsey* cannot govern here because it is not particularized to the facts of this case. They claim that *Halsey* dealt with police officers coercing a false statement via a forceful and relentless interrogation of the suspect for more than eight hours, during which the investigators inserted non-public information into the confession. But a case that is directly on point is not required so long as the precedent placed the constitutional question beyond debate. *Halsey* did so, recognizing prior precedent that held the fabrication of evidence by law enforcement officers violates the Fourteenth Amendment and that such a right had been established since at least 1985.[41] No more need be said as to the stand-alone fabrication of evidence claim than:

---

[39] 750 F.3d 273, 296 (3d Cir. 2014) (quoting *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004)).

[40] *Id.*

[41] *Halsey*, 750 F.3d at 296 (citing *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), which held that the defendant alleged a violation of his due process rights where his conviction was secured by the use of perjured testimony and the refusal of defense witnesses to testify obtained through threats made by local policing authorities); *see also Miller v. Pate*, 386 U.S. 1, 7 (1967) ("More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.").

*Halsey* established that sufficiently particularized precedent placed these detectives on notice that fabricating evidence to convict a criminal defendant *is unconstitutional*, regardless of whether that evidence is inserted into a confession to "bring about" his prosecution or to help secure his conviction. [42]

Second, turning to Dennis's deliberate deception claim, the detectives contend that this claim is based on the right not to be framed by law enforcement agents, which is too broadly worded and was not established until 1995, when the Supreme Court decided *Kyles v. Whitley*.[43]

The right not to be convicted on perjured testimony used by prosecutors at trial has been clearly established by the Supreme Court since at least 1935 in *Mooney v. Holohan*.[44] Seven years later, in *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), the Court extended this right by recognizing as a due process violation the conviction of a defendant through perjured testimony and the deliberate suppression of evidence favorable to the accused.

Moreover, "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified

---

[42] *Halsey*, 750 F.3d at 296 (recognizing stand-alone claim).

[43] 514 U.S. 419 (1995).

[44] 294 U.S. 103, 112 (1935) (holding due process not satisfied where "a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured"); *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004).

in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."[45]   We conclude that the constitutional rule that framing criminal defendants through use of fabricated evidence, including false or perjured testimony, violates their constitutional rights applies with such obvious clarity that it is unreasonable for us to conclude anything other than that the detectives were on sufficient notice that their fabrication of evidence violated clearly established law.  Thus, the District Court did not err in denying the motion to dismiss on qualified immunity grounds as to the due process claim in Count I(A) for the detective's fabricated evidence—here their false statements and testimony as to Dennis's clothing, Thompson's false testimony procured by threats and coercion, and their concealment of evidence that they knew revealed a witness's trial testimony as false.

As to the detectives' citation to *Gibson v. Superintendent*,[46] that case provides some guidance on the claim in Count I(B) for deliberate deception, but it does not support reversing the District Court's denial of the motion to dismiss this claim on qualified immunity grounds.  *Gibson* stated that the Supreme Court did not settle the principle that evidence in the hands of police could be imputed to the prosecutor until 1995, when it decided *Kyles v. Whitley*.[47]  This principle, however, is separate from the right not to be framed

---

[45] *United States v. Lanier*, 520 U.S. 259, 271 (1997) (internal quotations and brackets omitted).

[46] 411 F.3d 427 (3d Cir. 2005) , *overruled on other grounds as recognized by Dique v. N.J. State Police*, 603 F.3d 181, 182 (3d Cir. 2010).

[47] 514 U.S. 419 (1995).

by the use of perjured witness testimony at trial that was recognized by the Supreme Court in *Mooney*[48] or by the detectives' own perjured testimony at trial recognized by our Court in *Curran v. Delaware*.[49]

The detectives contend that they are entitled to qualified immunity from the deliberate deception claim because they could not reasonably anticipate what the prosecutors might fail to turn over at trial. This argument brings us back to the detectives' argument that their *Brady* obligation was not clearly established in 1992. Such an argument mischaracterizes Dennis's claim as one for *Brady* violations—not, as it was pled, a claim for violation of Dennis's due process rights to a fair trial caused by the detectives' deliberate deception. We decline to mischaracterize Dennis's deliberate deception claim in such a manner.

Dennis did not limit his deliberate deception claim to a mere failure to disclose exculpatory and impeachment evidence; rather, he claims the detectives violated his due process rights to a fair trial by "concealing and/or suppressing relevant and material evidence"[50] as part of a larger scheme to deliberately deceive the court and frame him for Williams's murder. As the District Court noted, Dennis does not seek relief from the detectives for *Brady* violations. To recharacterize Dennis's claims simply as *Brady* claims would run afoul of the longstanding principle that the plaintiff, as the master of the complaint, is free to choose between legal

---

[48] 294 U.S. at 103.

[49] 259 F.2d 707, 713 (3d Cir. 1958).

[50] App'x 72 (Complaint ¶¶ 94, 96).

20

theories,[51] and a defendant cannot create a cause of action from the fact pattern on behalf of the plaintiff. "It is the party suing, not the party sued, who enjoys the right to frame the claims asserted in a complaint."[52]

Here, Dennis's separate claim under Count I(B) for deliberate deception as a violation of his due process rights relies in part on the detective's failure to disclose certain exculpatory and impeachment evidence, which appears problematic in the face of a qualified immunity defense. Specifically, the detectives argue that a plaintiff can only bring a *Brady* claim against police officers by alleging that they affirmatively concealed evidence, *i.e.*, by alleging that police officers deliberately suppressed the evidence. Thus, to allege a deliberate deception claim against police officers, the detectives conclude that a plaintiff must allege a *Brady* claim. We disagree and will not restrict Dennis to a simple *Brady* claim.[53] But the label Dennis chooses also does not answer whether the detectives are entitled to qualified immunity on the claim Dennis brought.

A *Brady* claim, in essence, is a claim by a defendant that this due process rights were violated by the failure to disclose exculpatory or impeachment evidence to the defense, while a claim for deliberate deception in violation of due process must go beyond the failure to disclose evidence and arises when imprisonment results from the *knowing* use of false testimony or other fabricated evidence or from concealing evidence to

---

[51] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987).

[52] *Haley v. City of Bos.*, 657 F.3d 39, 49 (1st Cir. 2011).

[53] *Haley*, 657 F.3d at 49 (quoting *Condon*, 372 F.3d at 47).

create false testimony to secure a conviction.[54] To be clear, a deliberate deception claim against police officers and a *Brady* claim are not necessarily coterminous. In other words, a plaintiff alleging a claim against police officers for violation of due process rights by deliberate deception to the court need not bring a *Brady* claim. Yet, to survive the qualified immunity defense, the claim brought must involve a right with sufficiently clear contours that every reasonable officer would have understood that what he is doing violates that right—and a generalized notion that deliberate deception violates due process will not do.[55]

The case at bar is a paradigm example: Dennis's deliberate deception claim not only alleges that the Detectives withheld exculpatory and impeachment evidence that would have supported his alibi and defense, but that they also failed to correct testimony they knew was false and concealed from the defense the evidence that revealed that trial testimony as false. These allegations go beyond asserting a mere *Brady* violation and allege that, in an effort to secure Dennis's conviction, the detectives knowingly deceived the court and

---

[54] *See Mooney*, 294 at 112.

[55] *See al-Kidd*, 563 U.S. at 741 ("A Government official's conduct violated clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

the jury through false testimony in violation of Dennis's due process rights.[56]

Because Dennis's claim for violation of his due process rights by deliberate deception under Count 1(B) encompasses allegations that the detectives concealed or suppressed the time-stamped receipt to produce false trial testimony, *Gibson* does not control. Instead, *Mooney*, *Halsey*, *Pyle*, and *Curran* do. For those reasons, we will affirm the District Court's denial of the motion to dismiss Dennis's deliberate deception claim on qualified immunity grounds.

**V.**

Based on the foregoing, we hold that Dennis has alleged under Count I(A) and Count I(B) the violation of his due process rights clearly established at the time of the detective's conduct on which the claims are based. Accordingly, we will affirm the District Court's denial of the detectives' motion to dismiss on qualified immunity grounds. Because we do not have jurisdiction on this interlocutory appeal of the District Court's ruling that the *Heck* bar does not apply, we will dismiss without prejudice the appeal of that issue. We remand this action to the District Court.

---

[56] We recognize that the witness falsely testified through no fault of her own—she misread a welfare receipt's military-style time-stamp in making statements to the detectives when they interviewed her and she repeated that mistake at trial—but note that the detectives knew of the error and not only did nothing to correct it, they concealed the evidence that would have corrected it. This resulted in false testimony at trial.