NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
——————————

No. 21-2347
——————————

INTERNATIONAL SECURITY, LLC,

Appellant

v.

DANA M. BERRY; S. BENJAMIN PARSONS
——————————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-20-cv-01514)
District Judge: Honorable Maryellen Noreika
——————————

Submitted under Third Circuit LAR 34.1(a)
on March 29, 2022

Before: RESTREPO, ROTH and FUENTES, Circuit Judges

(Opinion filed April 27, 2023)

——————————

OPINION*

——————————

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, <u>Circuit Judge</u>

International Security, LLC, provides private security services. It could not provide these services between March 5 and April 3, 2020, however, because the Delaware Board of Examiners of Private Investigators and Private Security Agencies suspended its license. As a result of this suspension, International Security filed suit in the Delaware Superior Court against two Delaware State Police officers, alleging a due process claim for the suspension of its license and also a state law tort claim. The officers removed the action to federal district court and moved to dismiss. The District Court dismissed the due process claim and remanded the state law claim to the Superior Court. International Security appealed. For the reasons stated below, we will reverse the order of the District Court and remand for further proceedings.

**I.**

The State of Delaware licensed International Security under the Private Investigators and Private Security Agencies Act (the Act).[1] The Act and related regulations[2] govern private security agencies, like International Security, and establish procedures for suspending a Delaware private security agency's license.

The Act gives the "officer in charge of the Professional Licensing Section of the Division of the Delaware State Police" (the Director)[3] the authority to investigate licensing

---

[1] 24 Del. C. § 1300 et seq. International Security was licensed under the Act, except for when they were suspended from March 5 to April 3, 2020.
[2] *Id.*
[3] *Id.* § 1302.

2

violations.[4]  If the Director discovers a violation, disciplinary sanctions, including license suspension, may be imposed.[5]  Under § 1329, the Director may suspend a license only if the licensee received "written notice" and was "afforded a hearing before the board."[6]  In the event of an emergency, however, the Director may issue an immediate suspension without prior notice or a hearing.[7]  If the Director issues an emergency suspension, "upon application to the Board, [a licensee] shall be afford[ed] a hearing within 30 days, but not more than 90 days."[8]  The Act defines an emergency as a situation "that requires immediate action to protect the health and safety of the public."[9]

On March 5, 2020, Dana Berry, a Delaware State Police Sergeant supervising the Professional Licensing Section, informed International Security's president that she had learned that International Security was employing improperly licensed security officers. That same day, Berry and S. Benjamin Parsons, the Director of the Section, "unilaterally determined, without a hearing, and, upon information and belief, without further investigation, to immediately suspend International [Security's] license."[10]  Later that day, International Security received notice in writing regarding the emergency suspension.

The next day, Sergeant Berry either drove to or contacted the organizations with which International Security was contracting and demanded that the security officers from

---

[4] *Id.* § 1307.
[5] *Id.* § 1329.
[6] *Id.* § 1307(c).
[7] *Id.* § 1308.
[8] *Id.*
[9] *Id.*
[10] Appx. at 20.

3

International Security leave the premises immediately. As a result, three organizations cancelled contracts with International Security.

On March 12, 2020, International Security requested a hearing on its license suspension. However, twenty-one days later, the State of Delaware agreed to reinstate International Security's license. For that reason, no hearing ever took place.[11]

International Security brought suit under state tort law and under 42 U.S.C. § 1983, alleging that Officers Berry and Parsons in their individual capacities violated International Security's right to procedural due process. International Security sought to recover for its loss of business from the license suspension. The defendants removed the case from Delaware Superior Court to federal district court. The District Court dismissed the due process claim and remanded the state law tort claim to the Delaware Superior Court. International Security appealed.

## II.[12]

We address in turn International Security's due process claim and the request that the defendants had made for qualified immunity.

### A.

International Security asserts that the District Court erred in finding that the due process claim fails. We review de novo an order dismissing a complaint under Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim.[13] To survive a Rule 12(b)(6) motion, "a

---

[11] This request for a hearing is not mentioned in the District Court's opinion.

[12] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we exercise jurisdiction under 28 U.S.C. § 1291.

[13] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009).

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14] When considering a motion to dismiss, the court must "accept all well-pleaded allegations in the complaint as true and . . . draw all reasonable inferences in favor of the non-moving party."[15] We conclude that International Security properly alleged its due process claim.

As the District Court noted, "[t]he crux of Plaintiff's claim . . . seems to be that the temporary suspension of Plaintiff's private security license violated its [procedural] due process rights guaranteed by the Fourteenth Amendment."[16] To plead a due process claim adequately under § 1983 a plaintiff must show that there has been (1) a deprivation of "life, liberty, or property," and (2) a failure to provide "due process of law."[17] The parties do not dispute that International Security adequately pled the first prong of a procedural due process claim under § 1983.[18] Accordingly, we assess the adequacy of the pleading of the second prong: failure to provide due process of the law.

To determine what process was due, we consider the factors set out in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

---

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[15] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215–16 (3d Cir. 2002)).

[16] Appx. at 8.

[17] *Hill v. Borough of Kutztown*, 455 F.3d 225, 234–35 (3d Cir. 2006).

[18] *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[19]

An "essential principle" in weighing these factors is that "a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing.'"[20]

Because it found an emergency existed here, the District Court concluded that the post-deprivation notice and hearing was adequate. International Security argues, however, that there was no emergency and, thus, to receive due process of law, notice and a hearing should have preceded the license suspension. We must determine whether an emergency occurred.

International Security argues that it sufficiently pled a lack of emergency circumstances. The District Court determined that, in its Complaint, International Security "conclusorily assert[ed] that no emergency existed so as to show that the 'emergency suspension' conditions of the Act were not met."[21] Our review of the record convinces us that International Security was not conclusory in its assertion that the emergency suspension conditions under the Act—a situation requiring immediate action to protect the health and safety of the public—were not met. International Security alleged that neither the "actions, activities, [n]or personnel activities" required action to protect the public.[22] It described how Berry had called Alfredo Izquierdo, International Security's president, to

---

[19] *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).
[20] *Id.* at 595–96 (quoting *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009)).
[21] Appx. at 11.
[22] Appx. at 21.

explain that she was told that at least one of International Security's officers was not currently licensed. At this point, no mention had been made of emergency. The call itself suggests a lack of emergency, particularly since these unarmed security guards spent their duty hours greeting tenants, answering phones, and receiving mail. In response, Izquierdo asked Berry for this information in writing so that he could consult with a lawyer. Whereupon, Berry and Parsons suspended International Security's license. We do not believe that a request to consult with a lawyer turned this situation into an emergency.

Despite the "emergency," it was not until the next day, March 6, that Berry began contacting organizations that contracted with International Security about its "emergency" suspension. Viewed in the light most favorable to International Security, that the officers waited until the next day to contact the organizations to remove the security officers suggests that the officers did not believe that International Security's possible use of unlicensed security officers constituted an emergency requiring immediate action.

Moreover, the District Court inappropriately cast doubt on allegations in the Complaint, noting that "(1) Defendant Parsons referenced an emergency suspension in his letter and (2) common sense suggests that using unlicensed private security guards could pose an emergency threat to public health or safety."[23] This analysis is not proper at this stage of the litigation, where courts are to construe all facts alleged as true and in the light most favorable to the plaintiff.[24] If we accept International Security's facts as true, the conclusion that there was an emergency does not follow.

---

[23] Appx. at 12.
[24] *Phillips*, 515 F.3d at 231.

7

The District Court also prematurely engaged in fact-finding by injecting a rationale of "common sense" to find that an emergency existed.[25] At this stage, we should instead infer in International Security's favor as pled: the existence of several unlicensed security officers did not pose such a risk to public safety and health that International Security's entire license should have been immediately suspended. Thus, we conclude that International Security adequately pled that an emergency did not exist here.

In the absence of an emergency, then, we reject the District Court's finding on the pleadings alone that the availability of a post-deprivation hearing under § 1308 provided due process of the law. Here, notice and an opportunity for a hearing did not precede the deprivation. Considering the due process factors set out in *Mathews v. Eldridge*, we conclude that International Security adequately pled that it was denied due process of law: its private interest was adversely affected as contracts with it were terminated.

C.

We turn next to Berry and Parson's claim for qualified immunity. We exercise de novo review for "a denial of qualified immunity at the Rule 12(b)(6) stage."[26] To succeed here, International Security must allege facts (1) that each individual officer "violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[27] Because of its finding that International Security failed to allege a procedural due process claim, the District Court failed to reach the second prong.

---

[25] Appx. at 12.

[26] *Dennis v. City of Philadelphia*, 19 F.4th 279, 284 (3d Cir. 2021).

[27] *George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

8

Regarding the first prong, as discussed above, International Security claims that the officers violated its procedural due process right by suspending its license without pre-deprivation notice and a hearing in a non-emergency situation.[28] International Security has alleged some involvement by both individually named officers in support of this claim. We thus move to the second prong.

International Security has demonstrated that the right it describes was "clearly established" so that a reasonable official would appreciate the unlawfulness of his actions.[29] We agree that the case it cites in support, *Elsmere Park Club, LP v. Town of Elsmere*,[30] clearly establishes this right. *Elsmere* holds there is no due process violation if "there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist."[31] There, the court found no violation where a town shut down an apartment complex on an emergency basis because of mold found in the basement.[32] The facts of *Elsmere*, however, are distinct from the facts here. Unlike in *Elsmere*, Berry and Parsons invoked the emergency procedure despite sufficient allegations that there was no need for immediate action to protect the health and safety of the public. Accordingly, International Security has sufficiently alleged an unreasonable violation of its clearly established constitutional right. At this stage, the officers are not entitled to qualified immunity.

**IV.**

---

[28] Appellant's Brief at 20–21.

[29] *Wilson v. Layne*, 526 U.S. 603, 604 (1999); *Mirabella v. Villard*, 853 F.3d 641, 648 (3d Cir. 2017).

[30] 542 F.3d 412 (3d Cir. 2008).

[31] *Id.* at 418.

[32] *Id.* at 415.

For the above reasons, we will reverse the Order of the District Court and remand for further proceedings.