**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1162
_____

FERNANDO SAINT-JEAN

v.

PALISADES INTERSTATE PARK COMMISSION;
PALISADES INTERSTATE PARKWAY POLICE
DEPARTMENT; MICHAEL HOLLAND, Palisades
Interstate Parkway Police Officer, Badge #403; FABRICIO
M. SALAZAR, Palisades Interstate Parkway Police Officer,
Badge #362; PETER WOJCKIK, Palisades Interstate
Parkway Police Officer, Badge #406; RICHARD DEY,
Palisades Interstate Parkway Police Officer; JOHN/JANE
DOES #1-10, Palisades Interstate Parkway Police Officer
(fictitiously named); ANDREW SAMSON, Palisades
Interstate Parkway Municipal Prosecutor; MICHAEL
COPPOLA, Palisades Interstate Parkway Police Chief

Palisades Interstate Park Commission; Palisades Interstate
Parkway Police Department; Michael Holland; Fabricio M.
Salazar; Peter Wojckik; Richard Dey; Andrew Samson,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-19-cv-10680)
District Judge:  Honorable Kevin McNulty
_____

Argued:  June 29, 2022

Before:  JORDAN, PORTER, and PHIPPS, *Circuit Judges*.

(Filed: September 23, 2022)
_____

Dara C. Goodman   **[Argued]**
Callinan & Smith
3361 Park Avenue
Suite 104
Wantagh, NY 11793

    *Counsel for Appellee*


Justine M. Longa    **[Argued]**
Bryan E. Lucas
Robert J. McGuire
Office of Attorney General of New Jersey
Division of Law
Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

    *Counsel for Appellants*

2

---

OPINION OF THE COURT
_____

PHIPPS, Circuit Judge.

In searching the car of a Massachusetts man who was driving through New Jersey on a Sunday afternoon, police officers misidentified heart-shaped Valentine's Day candies as illegal drugs. On that basis, the officers arrested and prosecuted the man. After the heart-shaped objects were lab tested over two months later, the truth came out: they were just candies. Even with that knowledge, it still took nearly four additional months to drop the charges against the driver.

After that, the script flipped. The falsely accused driver sued the officers, a prosecutor, and three governmental entities for violations of several constitutional rights and for torts under New Jersey law. Each of those defendants moved to dismiss the complaint, and in their brief, the officers raised qualified immunity defenses.

The District Court partially granted that motion. It rejected the officers' request for qualified immunity for the driver's Fourth Amendment and related state-law claims. But it granted the motion to dismiss for one of the constitutional claims against the officers and all of the claims against the prosecutor and the governmental entities. Each of the dismissals was without prejudice, and the order permitted the driver 30 days to amend his complaint.

3

The officers filed a notice of appeal to challenge the District Court's denial of qualified immunity under federal and New Jersey law. But before the officers appealed, the driver had amended his complaint. Due to that prior amendment, the District Court's order was not final when the officers appealed. And without a final order, *see* 28 U.S.C. § 1291, or any other basis for appellate jurisdiction, we will dismiss this appeal.

## FACTUAL BACKGROUND
### (AS ALLEGED IN THE COMPLAINT)

After travelling to New Jersey for a family birthday party the day before, Fernando Saint-Jean, who was in his early 30s, began the return trip home to Massachusetts. As he drove with his uncle along the Palisades Interstate Parkway in New Jersey in the early afternoon of Sunday, May 6, 2018, a Palisades Interstate Park Police Officer pulled the vehicle over for driving too slowly and for having tinted windows. That officer, Michael Holland, requested identification from both men, and he asked them what country they were from. Saint-Jean replied that he was originally from Haiti but had become a United States citizen. Around that time, another Park Police Officer, Fabricio Salazar, arrived on the scene, and the officers ordered Saint-Jean and his uncle out of the car. The officers began to frisk the two men, and a third Park Police Officer, Peter Wojckik, also arrived. The officers then requested to search the vehicle, and Saint-Jean signed a consent-to-search form.

In searching a storage compartment between the two front seats, the officers found three small, sealable plastic bags containing several heart-shaped objects. Those objects had the appearance of Valentine's Day candies, but Valentine's Day

4

was two-and-a-half months earlier, and the officers suspected that the items were actually controlled substances – MDMA or ecstasy. They asked Saint-Jean what the items were, and he replied that they were Valentine's Day candies received from a coworker, Tammy. Saint-Jean offered to provide Tammy's contact information, but the officers declined. Instead, they arrested Saint-Jean, handcuffed him, and took him to a police station.

The intake process at the police station included photographing and fingerprinting Saint-Jean; it did not involve administering any tests on the small, heart-shaped objects. Despite not testing the suspected drugs or calling Saint-Jean's coworker, two officers, Holland and Richard Dey, initiated legal proceedings against Saint-Jean. Those included a traffic summons and a criminal summons for possessing a controlled substance, *see* N.J. Stat. Ann. § 2C:35-10a(1). After receiving those summonses, Saint-Jean left the police station two to three hours after the initial stop.

The criminal charges against Saint-Jean were unsuccessful. Before his initial appearance, the drug charge was downgraded to a disorderly persons offense, *see* N.J. Stat. Ann. § 2C:36-2. Also, over two months after his initial appearance, the New Jersey State Police Office of Forensic Sciences analyzed the small, heart-shaped objects and determined that they were not controlled substances. Despite learning that information, the prosecution continued for about four more months, until the charges were dismissed in November 2018.

## PROCEDURAL HISTORY

To vindicate his rights under federal and state law, Saint-Jean filed this suit in April 2019. *See* 28 U.S.C. §§ 1331, 1367. He brought several claims against the four officers in their individual capacities for arresting, detaining, and charging him. Those included claims for false arrest and malicious prosecution in violation of the Fourth and Fourteenth Amendments, as well as claims alleging violations of procedural and substantive due process. *See* 42 U.S.C. § 1983. In addition to the claims against the officers, Saint-Jean sued the prosecutor who litigated the criminal charges against him, and two governmental entities: the Palisades Interstate Parkway Police Department and the Palisades Interstate Park Commission.[1] Saint-Jean also brought tort claims under New Jersey law against all the defendants for false imprisonment and abuse of process.

The defendants moved to dismiss the complaint for lack of jurisdiction and for failure to state plausible claims. *See* Fed. R. Civ. P. 12(b)(1), (6). The officers' leading argument was that they should receive qualified immunity for Saint-Jean's constitutional and state-law tort claims. The prosecutor asserted absolute prosecutorial immunity, and the governmental defendants relied on state sovereign immunity. The defendants also argued that the due process claims did not state a claim for relief.

---

[1] Saint-Jean also sued Bergen County, New Jersey, and several unidentified officers and prosecutors as John Does. But he voluntary dismissed Bergen County, and as of the motion to dismiss, he had not identified or served the John Doe defendants.

The District Court granted the motion to dismiss in part through an order on December 28, 2020. In the accompanying opinion, the District Court explained that state sovereign immunity applied to the governmental entities and that absolute immunity applied to the prosecutor, and on those grounds, it dismissed all counts against them without prejudice. *See Saint-Jean v. Cnty. of Bergen*, 509 F. Supp. 3d 87, 99 (D.N.J. 2020) (entities, federal claims); *id.* at 114 (entities, state claims); *id.* at 99–100 (prosecutor, federal claims); *id.* at 114–15 (prosecutor, state claims). The District Court also concluded that Saint-Jean's allegations did not state a claim for due process violations, and it dismissed those counts, also without prejudice. *See id.* at 113.

But some of Saint-Jean's claims against the officers survived dismissal. After accepting the allegations in the complaint as true, the District Court determined that Saint-Jean demonstrated a violation of a constitutional right – an arrest and prosecution without probable cause – that applied with obvious clarity to Saint-Jean's particular circumstances, such that the constitutional violation was clearly-established. *See id.* at 109–12. On that basis, the District Court denied qualified immunity to the officers under federal law and the New Jersey Tort Claims Act. *See* N.J. Stat. Ann. § 59:3-1; *Saint-Jean*, 509 F. Supp. 3d. at 111–12 (federal claims); *id.* at 115 (state claims). And without qualified immunity under either federal or state law, the District Court permitted Saint-Jean's remaining constitutional and tort claims for false arrest and malicious prosecution to proceed. *See Saint-Jean*, 509 F. Supp. 3d. at 114–16.

The District Court's order permitted Saint-Jean 30 days to amend his complaint to cure his pleading deficiencies. Saint-

Jean amended within that time period – 25 days after the order. The officers also filed a notice of appeal within that time period – 30 days after the order.

The officers' notice of appeal did not automatically stay the proceedings in District Court. And without a stay, the officers had to respond to Saint-Jean's amended complaint. They did so through a motion to dismiss, again on qualified immunity grounds. After that motion was fully briefed the District Court stayed all proceedings in the case for the pendency of this appeal.

## DISCUSSION

Saint-Jean contends that his filing of an amended complaint moots the appeal. Mootness applies when events occurring after a court has assumed jurisdiction extinguish the controversy such that the court can no longer award any effectual relief to the prevailing party. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). But here, the District Court's order permitted Saint-Jean to amend his complaint within 30 days, and he did so within that time period and before the officers appealed. Because the original complaint was superseded before the appeal, the District Court's order was not final as to the officers' entitlement to qualified immunity based on the pleadings, and this Court never had jurisdiction to hear this appeal. *Cf. Adam v. Barone*, 41 F.4th 230, 233 (3d Cir. 2022) (explaining that, for purposes of original jurisdiction, the doctrine of standing addresses events occurring before the filing of a lawsuit, whereas mootness governs those arising after). Thus, as explained below, this appeal should be dismissed for that reason, not mootness.

8

**1. An order denying qualified immunity under federal and New Jersey law at the motion-to-dismiss stage is ordinarily immediately appealable only with respect to federal qualified immunity.**

Ordinarily, an order denying federal qualified immunity based on allegations in the complaint is immediately appealable. Because federal qualified immunity provides "immunity from suit," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted), a party may appeal an order denying federal qualified immunity at the motion-to-dismiss stage under the collateral order doctrine. *See Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013).

The same is not true for an order denying qualified immunity under New Jersey's Tort Claims Act. That law confers immunity from liability, not immunity from suit. *See Brown v. Grabowski*, 922 F.2d 1097, 1107–09 (3d Cir. 1990); *see also* N.J. Stat. Ann. § 59:3-1. That difference is dispositive: because New Jersey's Tort Claims Act does not provide immunity from suit, an order denying New Jersey qualified immunity under that statute is not immediately appealable. *See Lozano v. New Jersey*, 9 F.4th 239, 244 (3d Cir. 2021). Consequently, this Court lacks appellate jurisdiction over the officers' appeal of the denial of qualified immunity under New Jersey law.

9

**2. An order denying federal qualified immunity based on a complaint is not immediately appealable if the order allows for amendment and the complaint is amended before an appeal is filed.**

Although an order denying federal qualified immunity does not terminate the proceedings, it is ordinarily immediately appealable under the collateral order doctrine. *See Behrens*, 516 U.S. at 308; *George*, 738 F.3d at 571. *See generally Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (explaining that, typically, to be final, an order must "terminate an action" such that "a district court disassociates itself from a case" (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) and *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949))). That doctrine recognizes a "small class" of orders that, even without terminating the proceedings, are nonetheless subject to appeal. *Cohen*, 337 U.S. at 546. To fit within that class, an order must have three characteristics:

> (1) It must conclusively determine the disputed question;
> (2) It must resolve an important issue completely separate from the merits of the action; and
> (3) It must be effectively unreviewable on appeal from a final judgment.

*Mohawk Indus.*, 558 U.S. at 106 (quoting *Swint*, 514 U.S. at 42); *Cohen*, 337 U.S. at 546.

The District Court's order here, however, did more than deny qualified immunity to the officers based on the original

complaint. It also permitted Saint-Jean 30 days to amend his complaint. He did so within that time and before the officers appealed. Due to the timing of his amendment, the order did not satisfy the first prong of the collateral order doctrine at the time of the officers' appeal.

This appeal will not conclusively resolve a disputed question. Appellate review of the District Court's order would resolve the officers' qualified immunity only with respect to the allegations in the original complaint. And here, Saint-Jean amended his complaint before the officers appealed. Because an amended complaint "supersedes the pleading it modifies," the original complaint "no longer perform[ed] any function in the case" when the officers appealed, and a ruling on qualified immunity based on such a pleading would not conclusively resolve a disputed question. 6B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed.); *see also Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017); *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002). And even if this Court were to rule on qualified immunity now, the District Court would still need to compare the original complaint with the amended complaint and analyze whether the appellate ruling would apply after Saint-Jean's amendments. Due to the need for that subsequent comparison of the pleadings, immediate appellate review of the order would not conclusively determine the officers' entitlement to qualified immunity. *See Swint*, 514 U.S. at 42 (explaining that the collateral order doctrine "disallow[s] appeal from any decision which is tentative, informal or incomplete" (quoting *Cohen*, 337 U.S. at 546)).

The officers nonetheless want to know whether they are entitled to qualified immunity based on the allegations in the

11

original complaint.  They fear that law-of-the-case principles would obligate the District Court to adhere to its initial order denying them qualified immunity.  For that reason, they submit that the original order is conclusive.  That concern is unfounded.

As a prudential principle, law of the case holds that a rule of law announced in a case should later be applied to "the same issues in subsequent stages in the litigation."  *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991) (quoting *Devex Corp. v. Gen. Motors Corp.*, 857 F.2d 197, 199 (3d Cir. 1988)).[2]  Law of the case may counsel against, but does not prevent, a district court from reconsidering its prior rulings.  *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, [but] it does not limit the tribunal's power.").[3]  Because it is discretionary, law of the

---

[2] *See also Arizona v. California*, 460 U.S. 605, 618 (1983) ("[L]aw of the case is an amorphous concept.  As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); 18B Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure* § 4478 (3d ed.) (describing law-of-the-case doctrine as a "reluctan[ce] to reopen a ruling once made").

[3] *See also Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (explaining that law-of-the-case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power"); *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998) ("[T]he law of the case doctrine does not restrict a court's power but rather governs its exercise of discretion."); 18B Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure* § 4478 (3d ed.) ("Although courts are eager to avoid reconsideration of

case does not compel the same outcome as before for the officers' now pending motion to dismiss the amended complaint. Even more, an appellate court "is not bound by district court rulings under the law-of-the-case doctrine" because "[a]n appellate court's function *is* to revisit matters decided in the trial court." *Musacchio v. United States*, 577 U.S. 237, 245 (2016); *see also* 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478.6 (3d ed.) (observing "the basic principle that adherence by a lower court to its own ruling as the law of the case does not defeat appellate review when the issue is properly preserved and presented"). And even if the District Court applied law of the case to the officers' request for qualified immunity based on the amended complaint, that ruling would ordinarily still be subject to immediate appellate review as a denial of qualified immunity at the motion-to-dismiss stage. *See Behrens*, 516 U.S. at 308; *George*, 738 F.3d at 571.

## CONCLUSION

For the foregoing reasons, this Court lacks appellate jurisdiction over the officers' appeal of the order denying qualified immunity under federal and New Jersey law, and this case will be dismissed.

---

questions once decided in the same proceeding, it is clear that all federal courts retain power to reconsider if they wish.").

13