**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-1553 & 23-1626
_____

MARCUS BOONE

v.

CITY OF ELIZABETH; PATRICK SHANNON, Chief; JOSE TORRES, in his
individual and official capacity; SERGEANT RODNEY DORILUS; CARMINE
GIANNETTA, in his official and individual capacity; LIEUTENANT KEILY, in his
individual and official capacity; SERGEANT NIEWINSKI, in his individual and official
capacity; NEW JERSEY DEPARTMENT OF TREASURY; JOHN DOES 1-20

Robert Keily,
      Appellant in No. 23-1553

MARCUS BOONE

v.

CITY OF ELIZABETH; PATRICK SHANNON, Chief; JOSE TORRES, in his
individual and official capacity; SERGEANT RODNEY DORILUS; CARMINE
GIANNETTA, in his official and individual capacity; ROBERT KEILY, in his individual
and official capacity; SERGEANT NIEWINSKI, in his individual and official capacity;
STATE OF NEW JERSEY, DEPARTMENT OF TREASURY; JOHN DOES 1-20

Jose Torres,
      Appellant in No. 23-1626
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-13994)
District Judge:  Honorable Madeline C. Arleo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 13, 2025
_____

Before: PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Filed: August 7, 2025)
_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

After charges against him for unlawful possession of a firearm were dismissed, a former criminal defendant initiated this suit on the premise that the gun was planted on him. Two of the police officers whom he sued for unconstitutional malicious prosecution under both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act moved for summary judgment and, as part of those motions, raised qualified immunity defenses. The District Court partially denied the motions, and the officers now challenge that ruling on several grounds. For the reasons below, there is a lack of appellate jurisdiction over all but two of those challenges, and on *de novo* review of the remaining challenges, the District Court did not err. Accordingly, we will dismiss in part these appeals and affirm in part the order of the District Court.

## I. FACTUAL BACKGROUND

In the early evening of January 11, 2012, Marcus Boone and Lamont Jones exited the rooming house at 433 Westminster Avenue in Elizabeth, New Jersey, to get food. While on the building's porch, Jones saw uniformed police officers to his left, said "[o]h, shit," and began walking down Westminster Avenue toward them. Boone Dep. 43:7–9, Dec. 8, 2020, *Boone v. City of Elizabeth*, No. 2:18-cv-13994 (D.N.J. Mar. 14, 2023) (JA354). The officers were responding to an anonymous tip that there was a black male

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

with a puffy jacket and a gun at the rooming house, and as Jones approached the officers, one of them, Jose Torres, detained him. In searching Jones, Torres did not find a gun, but he did find ten glass vials of cocaine. The officers then arrested Jones for drug possession.

Upon leaving the building steps behind Jones, Boone took a different course. He turned right on Westminster Avenue and began to walk away from the officers. At that point, then-Sergeant Robert Keily ran after Boone, and upon catching up to him, stopped him and searched him while Boone was pinned against a parked car. Keily reported finding three envelopes of heroin and a Smith & Wesson SW40VE pistol in the upper right-side pocket of Boone's jacket. Keily arrested Boone. Torres later completed the post-arrest paperwork, some of which was sent to the Union County prosecutor.

On May 17, 2012, a grand jury in Union County indicted Boone on three charges. The first was for knowing possession of a controlled substance, *see* N.J. Stat. Ann. § 2C:35-10(a)(1), and the other two counts were for gun offenses – possession of a firearm without a permit, *see id.* § 2C:39-5(b), and possession of a defaced firearm, *see id.* § 2C:39-3(d).

At a pretrial hearing on June 21, 2013, Boone moved to suppress the drugs and the gun as evidence. Boone argued that Keily did not have a reasonable suspicion of criminal activity to justify an investigatory stop as is required under the Fourth Amendment. *See generally Terry v. Ohio*, 392 U.S. 1, 29 (1968). Neither Keily nor Torres testified at that hearing – the only witness was another officer who was at the scene. Based on that officer's account, the trial court denied Boone's suppression motion. In determining that the stop and frisk was justified, the trial court relied on Jones's expression of "[o]h shit," Boone's jacket matching the anonymous tip, and officer-safety concerns associated with investigating a report of a man with a gun. Suppression Hr'g Tr. 55:22, *State v. Boone*, No. 12-05-0379-I (N.J. Super. Ct. Law Div. June 21, 2013) (JA222).

3

Within a week of that ruling, Boone pleaded guilty to one of the gun offenses – possession of a firearm without a permit, *see* N.J. Stat. Ann. § 2C:39-5(b) – and the other two charges were dropped.  When he entered that plea, Boone made several admissions.  He averred that a police officer had found a handgun while searching his coat pocket, that Boone knew the gun was there, and that he did not have a permit to carry it.  Boone did, however, preserve his right to appeal the denial of his motion to suppress.

Approximately two weeks before his sentencing hearing, Boone filed a motion to withdraw his guilty plea, this time asserting that he did not possess, control, or own the handgun.  On January 31, 2014, the trial court denied Boone's motion to withdraw his guilty plea and sentenced Boone to a seven-year prison term, which he began to serve.

Boone appealed that conviction.  Consistent with his reservation of rights, he challenged the denial of his motion to suppress evidence.  Boone's arguments that he was stopped and searched in violation of the Fourth Amendment persuaded the Appellate Division of the New Jersey Superior Court, which vacated his conviction and remanded the case to the trial court.  *See State v. Boone*, No. A-3720-13T2, at 1, 6 (N.J. Super. Ct. App. Div. July 14, 2016) (JA247, 252).  In response to a motion from the prosecution, the trial court dismissed the gun charge on September 19, 2016 – over four-and-a-half years after Boone's initial arrest.

## II. PROCEDURAL HISTORY

In September 2018, despite his testimony during his guilty plea in which he admitted to possessing the gun, Boone initiated this civil rights suit on the premise that the police officers planted the weapon on him in violation of his constitutional rights.  Among the claims he brought to vindicate those rights were counts against Keily and Torres for unconstitutional malicious prosecution under both 42 U.S.C. § 1983 and the New Jersey

4

Civil Rights Act, *see* N.J. Stat. Ann. § 10:6-2, as well as a count against them under 42 U.S.C. § 1985 for a conspiracy to violate federal civil rights. *See also* 28 U.S.C. §§ 1331, 1343(a)(3), 1367(a). After other counts were dismissed at the pleading stage, Keily and Torres moved for summary judgment on those three counts. In their motions, they raised several defenses – including federal and state qualified immunity.

The District Court resolved those motions in the officers' favor with respect to Boone's § 1985 claim, but it preserved Boone's two malicious prosecution claims. The malicious prosecution claims, the District Court reasoned, could not be resolved on summary judgment because they were subject to genuine disputes of material fact that prevented judgment as a matter of law not only as to the merits of the claims but also as to the officers' qualified immunity defenses. Nor was the District Court persuaded by the officers' remaining legal arguments in support of summary judgment, which included defenses predicated on collateral estoppel, judicial estoppel, and superseding cause. Through this appeal, the officers dispute the denial of their summary judgment motions.

## III. DISCUSSION

The collateral order doctrine allows immediate appellate challenges to a "small class" of orders that have become final before a final judgment is entered in a civil case. *Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 835 (3d Cir. 2022) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949)). Challenges to orders denying qualified immunity – a doctrine that applies to civil rights claims against law enforcement officers except when (a) the facts put forward by a plaintiff demonstrate a violation of a federal right and (b) that right was clearly established[1] – fall into that small

---

[1] *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018); *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam).

class of immediately appealable orders in two scenarios.  Those are, first, if the challenge is to the conclusion that the undisputed material facts evidence a violation of a federal right, and, second, if the challenge is to the conclusion that the federal right violated has been clearly established.  *See Ziccardi v. City of Philadelphia*, 288 F.3d 57, 61 (3d Cir. 2002) (Alito, J.) ("[W]e lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove; but we possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right."); *see also Mitchell v. Forsyth*, 472 U.S. 511, 528–30 (1985) (explaining that the collateral order doctrine applies to denials of qualified immunity); *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996) (clarifying that collateral order jurisdiction over denials of qualified immunity is not defeated by the presence of additional claims still pending in the district court).

There are two corollaries to these principles.  First, the denial of summary judgment based on the presence of a genuine dispute of material fact is not a final order under the collateral order doctrine.  *See Johnson v. Jones*, 515 U.S. 304, 313 (1995) (determining that the "portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial" is not appealable under the collateral order doctrine); *Ziccardi*, 288 F.3d at 61 (citing *Johnson*, 515 U.S. at 313).  Second, although it permits the immediate appeal of some orders denying qualified immunity, the collateral order doctrine does not automatically extend appellate review to the denial of other affirmative defenses.  *See Dennis v. City of Philadelphia*, 19 F.4th 279, 285–86 (3d Cir. 2021) (distinguishing, for purposes of collateral order jurisdiction, between a reviewable denial of qualified immunity at the motion-to-dismiss stage and an

6

unreviewable rejection of a defense predicated on *Heck v. Humphrey*, 512 U.S. 477 (1994)); 15A *Wright & Miller's Federal Practice & Procedure* § 3914.10.7 (3d ed. May 21, 2025 update) ("Immunity appeals . . . are often decided without reviewing matters that might defeat liability or litigation apart from the claim on the merits. State or other law defenses on the merits are an example."). For those additional affirmative defenses to be immediately reviewable, they must meet the tagalong requirements of pendent appellate jurisdiction: the arguments must be either "inextricably intertwined" with the immediately appealable challenge or "necessary to ensure a meaningful review" of the immediately appealable challenge. *Dennis*, 19 F.4th at 285–86 (quoting *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 130 (3d Cir. 2018)).

These same collateral order principles also apply to denials of qualified immunity under New Jersey's Civil Rights Act. *See Lozano v. New Jersey*, 9 F.4th 239, 245 (3d Cir. 2021) (holding that the collateral order doctrine extends to summary judgment orders denying qualified immunity under the New Jersey Civil Rights Act "insofar as they raise questions of law"). *But cf. Saint-Jean*, 49 F.4th at 834 (holding that a denial of immunity under New Jersey's Tort Claims Act is not immediately appealable as a collateral order).

### 1. Many of the Arguments Are Not Immediately Appealable, and the Two Arguments That Are Immediately Appealable Do Not Succeed.

In seeking to appeal the denial of qualified immunity, the officers first argue that there are no genuine disputes of fact as to any element of Boone's malicious prosecution claims. That contention, however, requires a reassessment of the District Court's review of the summary judgment record because the presence of a genuine dispute of material fact was the overarching basis for the District Court's denial of the officers' summary judgment motions on both malicious prosecution claims. To recap, under one version of the facts (the gun was not planted), Boone has no claims for unconstitutional malicious prosecution,

yet under another version (the gun was planted), he has a case because the officers knew that there was a lack of probable cause for initiating the proceedings. *See Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (enumerating the elements of an unconstitutional malicious prosecution claim, which requires the initiation of a criminal proceeding without probable cause). But under the collateral order doctrine, it is not permissible to review the District Court's factual assessment of the summary judgment record. *See Ziccardi*, 288 F.3d at 61 ("[T]he collateral order doctrine does not permit an appeal from an order denying a motion for summary judgment if the issue raised is 'whether or not the evidence in the pretrial record [is] sufficient to show a genuine issue of fact for trial.'" (second alteration in original) (quoting *Johnson*, 515 U.S. at 307)). Thus, this Court may not address whether the District Court erred in concluding that Boone made "a showing sufficient to establish the existence of an element essential to [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *cf. Scott v. Harris*, 550 U.S. 372, 377–78 (2007) (describing one of the two prongs of the qualified immunity analysis as "whether [the defendant's] actions violated the Fourth Amendment"). Consequently, the arguments that the officers now raise to attack that conclusion – the contentions that there was a dearth of support for concluding that the pistol was planted and that Boone had inadequate evidence of his innocence[2] – fall outside of the collateral order doctrine and are not immediately appealable. *See Johnson*, 515 U.S. at 319–20.

Two of the officers' qualified immunity arguments, however, do not require revisiting the District Court's assessment of the summary judgment record. *See Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014) (explaining that jurisdiction over a denial of qualified

---

[2] *But see Thompson v. Clark*, 596 U.S. 36, 49 (2022) (holding that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence").

immunity is appropriate where appellants "raise legal issues . . . different from any purely factual issues that the trial court might confront if the case were tried"). In particular, they contend that – even treating the planting of the gun as an open question – Boone has not alleged a violation of a federal right because the other undisputed facts do not demonstrate two elements of a claim for unconstitutional malicious prosecution: a lack of probable cause or a favorable termination. *See generally Harvard*, 973 F.3d at 203 (recounting the elements of a Fourth Amendment malicious prosecution claim, which include (i) the initiation of proceedings; (ii) without probable cause; (iii) out of malice "or for a purpose other than bringing the plaintiff to justice"; such that (iv) the proceedings terminated in the plaintiff's favor; yet (v) resulted in the plaintiff's seizure pursuant to legal process (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003))).

In arguing that, even with factual disputes about the planting of the gun the lack-of-probable-cause requirement is not met, the officers rely on *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000). From that decision, they extract the proposition that a prosecution based on illegally obtained evidence does not violate the Fourth Amendment. But that case, which did not involve qualified immunity, is primarily about the scope of remedy, and it did not address the alleged planting of evidence. *See id.* at 157 (explaining that "victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy . . . but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution" (quoting *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999))). Thus, the officers overread *Hector v. Watt* when they contend that it stands for the proposition that no constitutional violation occurs when a prosecution is based on planted evidence for which the good-faith exception to the exclusionary rule does not apply. *See Manuel v. City of*

*Joliet*, 580 U.S. 357, 369 n.8 (2017) ("[I]f the proceeding is tainted – as here, by fabricated evidence – and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights . . . .").

The officers also argue – again assuming the planting of the gun – that they are entitled to qualified immunity because Boone does not satisfy the favorable termination element for an unconstitutional malicious prosecution claim. They contend that this element of a malicious prosecution claim cannot be met based on a dismissal of charges prompted only by the suppression of evidence and that therefore the officers did not violate Boone's Fourth Amendment right to be free from a malicious prosecution. *See Harvard*, 973 F.3d at 203 (explaining that to prove a Fourth Amendment claim for malicious prosecution, a plaintiff must establish that "the criminal proceeding ended in [his] favor" (quoting *Marasco*, 318 F.3d at 521)). But any assertion that the favorable termination element requires a finding of actual innocence has no traction after *Thompson v. Clark*, 596 U.S. 36 (2022). There, the Supreme Court held that any termination short of conviction may satisfy the favorable termination requirement:

> [A] Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.

*Id.* at 49. *But cf. Allen v. N.J. State Police*, 974 F.3d 497, 502–04 (3d Cir. 2020) (holding that the dismissal of charges based on the suppression of evidence on technical grounds and not for its unreliability did not satisfy the indication of innocence requirement for the favorable termination element of an unconstitutional malicious prosecution claim).[3]

---

[3] Although both *Thompson* and *Allen* were decided after Boone's case was dismissed, the officers do not argue in this appeal that these intervening decisions entitle them to qualified immunity based on the clearly established prong, and so this Opinion does not address that issue.

Thus, because actual innocence is not required, the officers' challenge to the favorable termination element fails.[4]

---

[4] Our dissenting colleague believes that the collateral order doctrine does not extend to an evaluation of the sufficiency of Boone's favorable termination allegations needed for his malicious prosecution claim. Our dissenting colleague treats the favorable termination element of a Fourth Amendment malicious prosecution claim as identical to the favorable disposition requirement from *Heck v. Humphrey*, 512 U.S. 477 (1994). This opinion does not address that issue. *See generally Roberts v. City of Fairbanks*, 947 F.3d 1191, 1201 (9th Cir. 2020) ("*Heck*'s favorable-termination requirement is distinct from the favorable-termination element of a malicious-prosecution claim."); *Smalls v. Collins*, 10 F.4th 117, 137 (2d Cir. 2021) (recognizing that unlike Fourth Amendment malicious prosecution claims, avoidance of the *Heck* bar does not "require[] an affirmative showing of innocence," showing that the two concepts are distinct), *abrogated on other grounds by Thompson*, 596 U.S. at 49; *id.* at 137 n.9 ("Although the *Heck* Court did not itself refer to its rule as a 'favorable-termination' requirement, it has become widely referred to and recognized as such."); *Montoya v. Vigil*, 898 F.3d 1056, 1066 n.7 (10th Cir. 2018) ("[T]here are two termination requirements relevant to a § 1983 malicious prosecution claim. One is the favorable termination requirement that is an element of the malicious prosecution claim itself. The other is the *Heck v. Humphrey* rule that a litigant cannot bring a § 1983 claim challenging a conviction's legitimacy until that conviction has been dismissed."). Instead, this opinion concludes that the favorable termination element of a Fourth Amendment malicious prosecution claim may be evaluated under the collateral order doctrine when qualified immunity has been denied for such a claim. Even so, according to our dissenting colleague, an assessment of the favorable termination requirement for a constitutional malicious prosecution claim is a distinct inquiry from whether a Fourth Amendment *right* has been violated and therefore an assessment of the legal sufficiency of the evidence with respect to the favorable termination requirement cannot be addressed in this appeal. As a general matter, the Supreme Court has rejected that degree of partitioning in qualified-immunity appeals and instead permitted consideration of the sufficiency of the underlying § 1983 claim because that is a purely legal issue related to qualified immunity. *See generally Mitchell*, 472 U.S. at 530 (explaining that appellate review is permitted of orders denying qualified immunity when they "turn[] on an issue of law"). In particular, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court rebuffed the respondent's contention that "the Court of Appeals had jurisdiction to determine whether his complaint avers a clearly established constitutional violation but that it lacked jurisdiction to pass on the sufficiency of his pleadings. Our opinions, however, make clear that appellate jurisdiction is not so strictly confined." *Id.* at 673. Moreover, in one of its most recent Fourth Amendment malicious prosecution cases, the Supreme Court recounted the process for defining the right at issue, which involves "look[ing] to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with 'the values and purposes *of the constitutional right* at issue,'" and it then included favorable termination as one of those elements. *Thompson*, 596 U.S. at 43 (emphasis added) (quoting *Manuel*, 580 U.S. at 370). Based on that precedent, which post-dates *Dennis*, 19 F.4th at 279, a case that did not involve a malicious prosecution claim, favorable termination is an element of a § 1983 claim for Fourth

11

## 2. *Challenges to Other Purely Legal Issues Unassociated with Qualified Immunity Are Not Immediately Appealable under the Collateral Order Doctrine.*

The officers also attempt to raise several legal challenges to the District Court's denial of summary judgment unrelated to qualified immunity, and they premise those challenges on other facts not in dispute. They assert that as a matter of law Boone's guilty plea is a superseding cause of his incarceration and that Boone should be estopped from contradicting past proceedings based on his prior contrary guilty plea. As arguments based on affirmative defenses – collateral estoppel, judicial estoppel, waiver, and superseding cause but not qualified immunity – they are not generally subject to the collateral order doctrine. *See generally Cohen*, 337 U.S. at 546 (articulating the three requirements of collateral order jurisdiction as a conclusive determination of the disputed question, complete separability of the question from the merits of the action, and the lack of an opportunity to review the question on appeal from a final judgment); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009).[5]

## IV. CONCLUSION

For the foregoing reasons, we will dismiss in part this appeal and affirm in part the order of the District Court denying qualified immunity to Lieutenant Keily and Detective Torres.

---

Amendment malicious prosecution, and thus the collateral order doctrine permits evaluation of that element of a Fourth Amendment malicious prosecution claim.

[5] For closure, none of the other challenges raised, which themselves are outside of the collateral order doctrine, meet either requirement for tagalong appellate review under pendent appellate jurisdiction. *See generally Dennis*, 19 F.4th at 285–86.

FREEMAN, *Circuit Judge*, dissenting in part:

I join the majority opinion in most respects. I agree that we lack jurisdiction to review most of the officers' arguments. I also agree that we have jurisdiction to review the officers' argument based on *Hector v. Watt*—which is ostensibly a qualified-immunity argument, albeit a meritless one. However, I cannot join the portion of the majority opinion that reaches the merits of a separate argument: whether Boone's malicious-prosecution claims are barred by a favorable-termination requirement. Supreme Court authority and our precedent instruct that the favorable-termination question is not reviewable at this stage.

## I

Our Court has jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. In addition to our final-order jurisdiction, the collateral order doctrine gives us appellate jurisdiction over "a narrow class of decisions that do not terminate the litigation, but are sufficiently important and collateral to the merits that they should nonetheless be treated as final." *Will v. Hallock*, 546 U.S. 345, 347 (2006) (cleaned up). That narrow class of interlocutory decisions are treated as final because if they (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) are "effectively unreviewable on appeal from a final judgment." *Id.* at 349 (cleaned up).

The Supreme Court consistently emphasizes the "modest scope" of the collateral order doctrine. *Id.* at 350. The doctrine must remain narrow so as not to "swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment

1

has been entered." *Id.* (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

The Supreme Court has defined the class of orders that are reviewable under the collateral order doctrine: "orders denying absolute immunity, [certain] orders denying qualified immunity, orders denying Eleventh Amendment immunity, and adverse double jeopardy rulings." *Graber v. Doe II*, 59 F.4th 603, 608 (3d Cir. 2023) (citing *Will*, 546 U.S. at 350 (collecting cases)).[1]  This class of orders "cannot be reviewed effectively after a conventional final judgment because the suit has already occurred by the time the appeal is reviewed, and thus the purpose of the immunity (or double jeopardy protection) is defeated." *Id.* (cleaned up).

The collateral order doctrine does not permit appeals from decisions denying other defenses to liability. *See id.* at 609–10.  Those orders can be effectively reviewed after the entry of final judgment. *Id.*

## II

Applying these principles here, I agree that the collateral order doctrine permits us to review the officers' argument based on *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000). The officers invoke *Hector* to argue that they are immune from suit because they had probable cause to arrest and prosecute Boone, whether they planted a weapon on him or

---

[1] "An order denying qualified immunity is appealable under the collateral order doctrine only "to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  To the extent that a denial of qualified immunity turns on disputed issues of fact, there is no collateral-order jurisdiction. *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

2

not.[2]  Although their argument is baseless, it is nonetheless a qualified-immunity argument that turns on law, not facts.

However, in my view, the majority opinion goes astray when it characterizes a separate argument—that Boone did not obtain a favorable termination to his criminal prosecution—as a qualified-immunity argument.  Maj. Op. at 10.  Supreme Court authority and our precedent demonstrate that this characterization is incorrect.

Recall that "[a]n official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (cleaned up).  So the qualified-immunity analysis has two prongs: (1) whether the official's conduct violated a right, and (2) whether that right was clearly established at the time of the conduct.  Both prongs address the law and the facts at the time of the official's conduct.  Neither prong contemplates whether a later criminal prosecution resolved favorably for the accused.

Of course, favorable termination is relevant to Boone's case—it's an element of his malicious-prosecution claims.  *Thompson v. Clark*, 596 U.S. 36, 44 (2022).  But whether Boone obtained such a favorable termination is distinct from the factual and legal questions relevant to qualified immunity (and our jurisdiction)—namely, whether the officers violated Boone's right to be free from arrest and prosecution without

---

[2] *Hector* provides no support for this argument.

3

probable cause and whether that right was clearly established at the time of the officers' conduct.

Our opinion in *Dennis v. City of Philadelphia*, 19 F.4th 279 (3d Cir. 2021) demonstrates this point. In *Dennis*, a district court denied a motion to dismiss certain claims on the basis of qualified immunity. Because that decision turned on an issue of law, we had jurisdiction to review it under the collateral order doctrine. *See id.* at 285. But the defendants also sought appellate review of another question: whether the plaintiff's claims were barred by *Heck v. Humphrey*'s favorable-termination rule. *Id.* at 285–86 (discussing *Heck*, 512 U.S. 477 (1994)). We explained that we lacked jurisdiction to review that question. *Id.* At the outset, we acknowledged that the *Heck* question "is not independently appealable" under the collateral order doctrine. *Id.* We then considered whether we had discretion to exercise supplemental appellate jurisdiction over the *Heck* question. We concluded that the requirements for supplemental jurisdiction were not satisfied: The *Heck* question was not "inextricably intertwined" with the appealable qualified-immunity decision, nor was it necessary for us to review the *Heck* question to ensure meaningful review of the qualified-immunity decision. *Id.*

Here, the officers disclaim reliance on *Heck*, yet they still argue that Boone's claim is barred by a favorable-termination rule. We made clear in *Dennis* that a favorable-termination analysis is distinct from a qualified-immunity analysis. *Dennis*, 19 F.4th at 286–87 (rejecting an argument that "if *Heck* bars [plaintiff]'s claims, he has failed to state a claim upon which relief can be granted, and thus failed to allege sufficiently the violation of a constitutional right," because the *Heck* analysis "involves

4

different facts, and a different legal framework, than the process of determining whether a plaintiff has sufficiently alleged the violation of a constitutional right"). That reasoning applies equally here.

The majority opinion sidelines *Dennis* in favor of out-of-Circuit, pre-*Thompson* caselaw distinguishing *Heck*'s favorable-termination rule (which requires a judgment in plaintiff's favor that invalidates the conviction or sentence) from the favorable-termination element of a malicious prosecution claim (which requires that the prosecution end without a conviction). Maj. Op. at 11 n.4. But that distinction makes no difference to our appellate jurisdiction. Neither favorable-termination requirement answers either prong of the qualified-immunity inquiry. *See Dennis*, 19 F.4th at 286–87. So the officers' favorable-termination argument is not a qualified immunity argument reviewable under the collateral order doctrine. *See id.* at 285–86.

By sidelining *Dennis*, the majority opinion obfuscates our precedent's distinction between favorable termination and qualified immunity. True, the favorable-termination issue here turns on law rather than facts. *See* Maj. Op. at 11 n.4. But that is not enough to make the issue reviewable under the collateral order doctrine. It also would need to be a *denial of a claim of qualified immunity*. *See Mitchell*, 472 U.S. at 530. It is not. *Dennis*, 19 F.4th at 286–87.

The majority opinion relies on *Ashcroft v. Iqbal* 556 U.S. 662 (2009) and *Thompson* to reason otherwise. Maj. Op. at 11 n.4. We rejected the same *Iqbal*-based reasoning in *Dennis*. There, the defendant officers cited *Iqbal* to "essentially argue that, if *Heck* bars Dennis's claims, he has failed to state a claim upon which relief can be

5

granted, and thus failed to allege sufficiently the violation of a constitutional right." *Id.* We explained how the officers' argument "papers over the difference between *Heck* and the typical analysis under Rule 12(b)(6) that was contemplated by *Iqbal*." *Id.* (recounting that *Iqbal* addressed pleading sufficiency). And we rejected the officers' attempt "to bring *Heck* within our jurisdiction by shoehorning *Heck* into the qualified immunity analysis." *Dennis*, 19 F.4th at 286. *Dennis* binds us here.

The majority opinion's reliance on *Thompson* fares no better. The majority opinion states that *Thompson* establishes that "the collateral order doctrine permits evaluation of [the favorable termination] element of a Fourth Amendment malicious prosecution claim." Maj. Op. at 12 n.4. But *Thompson* says nothing about the collateral order doctrine. *Thompson* addressed a conventional final judgment, 596 U.S. at 39, so collateral-order jurisdiction simply did not come up. Moreover, the Supreme Court noted in *Thompson* that a defense against the favorable-termination element of a malicious-prosecution claim is distinct from the protections qualified immunity affords to officers. *Id.* 48–49 ("[R]equiring a plaintiff to show that his prosecution ended with an affirmative indication of innocence is not necessary to protect officers from unwarranted civil suits— among other things, officers are still protected by the requirement that the plaintiff show the absence of probable cause and by qualified immunity.").[3] If anything, *Thompson*

---

[3] Of course, a plaintiff's failure to establish the absence-of-probable-cause element of a malicious-prosecution claim may be a basis for denying qualified immunity. After all, if an official had probable cause to prosecute a plaintiff, the official did not violate that plaintiff's right to be free from prosecution without probable cause. But favorable termination and qualified immunity are distinct.

reinforces our conclusion in *Dennis*. *Dennis*, 19 F.4th at 286 ("These inquiries are distinct and separable."); *see also Thompson*, 596 U.S. at 49 (concluding that Thompson satisfied the favorable-termination requirement and "express[ing] no view" on whether the defendant is entitled to qualified immunity). It certainly does not undermine *Dennis*, as the majority opinion suggests. Maj. Op. at 11 n.4 (stating that *Thompson* post-dates *Dennis* and establishes that favorable termination is reviewable under the collateral order doctrine).

In sum, the officers' favorable-termination argument is not independently reviewable under the collateral order doctrine. *See Dennis*, 19 F.4th at 285–86. We also lack discretion to exercise pendent jurisdiction over that argument because it is not sufficiently related to qualified immunity. *See id.* at 286.

## III

*Dennis* made clear that a favorable-termination defense is distinct from a qualified-immunity defense. Even when we have jurisdiction to review the latter under the collateral order doctrine, we cannot review the former. Today's decision conflicts with *Dennis* and will sow confusion among litigants in this Circuit. Accordingly, I respectfully dissent in part from the majority opinion and the judgment.

7